[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO REMOVE MATTER FROM JURY DOCKET
In September, 1985, the plaintiff Peabody International (hereafter "Peabody") entered into a lease agreement with the defendant lessor, 101 Broad Street Associates (hereafter "101 Broad Street"), leasing Suite 301 of Two Landmark Square in CT Page 4625 Stamford. These premises were on the top floor of that building. In June, 1986, Peabody, with the approval of 101 Broad Street, sublet the space for a term of five years through May 31, 1991, to the defendant, Coordination Technology (hereafter "Coordination").
On October 30, 1986, Coordination notified Peabody that it was vacating the premises and soon thereafter moved to new offices in Trumbull. Coordination claimed that there was a persistent problem with a leaking roof. While, Coordination continued to pay rent until May, 1987, it notified Peabody that thereafter it would he withholding rent until it deemed the premises safe for occupancy.
On September 2, 1987, Peabody filed a complaint, revised on March 28, 1988, seeking a declaratory judgment to determine whether the condition of the premises justified Coordination's refusal to pay rent, thereby also excusing Peabody, or whether Coordination had breached the sublease, and further seeking relief by way of money damages against one or the other of the defendants for the money it continued to pay under the prime lease.
On May 25, 1988, Coordination filed its answer, special defenses and counterclaim, and claimed the matter for the jury docket. While asserting constructive eviction because the premises were untenable as a result of the leak so as to relieve it from liability to Peabody under the sublease, Coordination also sought a declaratory judgment that its sublease was void and that the prime lease was of no effect because it was not properly executed by 101 Broad Street. It also filed a counterclaim against Peabody for damages alleged to have been sustained as a result of the leaky roof.
The docket history of this case is not immediately apparent, but counsel for Peabody has supplied an account which has not been disputed by the other parties.
On August 4, 1988, without any objection by Coordination, Peabody claimed the matter for the non-jury housing trial list, based on the express terms of the lease, which waived a jury trial.
On August 24, 1989, this matter was transferred by the housing court from the Superior Court Housing Session at Norwalk to the Superior Court at Stamford, and was given a new docket number.
Thereafter, in early 1991, this matter appeared on the dormancy calendar, most probably because there was no record in CT Page 4626 the court computers that this matter had ever been claimed for any trial list.
On February 19, 1991, the defendant, 101 Broad Street filed its motion to remove the case from the jury docket and Coordination filed a memorandum of law in opposition. At that time, the motion appeared not to have been pursued by any of the parties. Peabody then claimed this matter to the non-jury trial list on March 22, 1991.
On May 22, 1991, this matter appeared on the assignment list for non-jury cases. At that calendar, counsel for Peabody and 101 Broad Street were prepared to schedule the matter for a pre-trial conference, but counsel for Coordination objected to proceeding with this matter for pretrial conference as a non-jury matter, arguing that the case was on that trial list improperly.
Now the motion has been reclaimed.
 I.
Essentially, both Peabody and 101 Broad Street, claim the case should be removed from the jury docket because the parties have waived a jury trial in their respective leases. Under Connecticut law parties to a lease may waive their right to a
jury trial. Nowey v. Kravitz, 133 Conn. 394, 395, 51 A.2d 495
(1947).
The lease between Peabody and 101 Broad Street has a provision — Article 28 Waivers, subsection 28.04, which reads:
 To the extent permitted by applicable law, Landlord and Tenant hereby waive trial by jury in any action, proceeding, or counterclaim brought by either against the other on any matter whatsoever arising out of or in any way connected with this Lease, the relationship of Landlord and Tenant, or Tenant's use or occupancy of the Demised Premises, or any emergency or other statutory remedy with respect thereto.
Under the terms of the sublease between Peabody and Coordination, in paragraph 2, the prime lease was noted as attached to the sublease as an exhibit and:
 incorporated in this sublease and made a part hereof. This Sublease is subject to all of the covenants, agreements, terms, conditions and provisions of the Prime Lease there applicable . . . . CT Page 4627
(b) All of the rights, benefits, duties and obligations of Peabody under the Prime Lease shall be deemed to be corresponding rights, benefits, duties and obligations of Coordination Technology under this Sublease.
(c) To the extent not inconsistent with the provisions of this Sublease, the terms, provisions, covenants and conditions of the Prime Lease, as modified herein, are hereby incorporated by reference on the following basis: CT hereby assumes all of the obligations of Peabody under the Prime Lease with respect to the Premises, other than the payment of rent and additional rent to the Lessor thereunder during the Term and Peabody hereby assumes all of the obligations of Lessor under the Prime Lease with respect to the Premises. The term "Landlord" therein shall refer to Peabody, its successors and assigns and the term "Tenant" therein shall refer to CT, its successors and assigns. . . .
These parties claim the prime lease between 101 Broad Street and Peabody contained a jury waiver provision, and that the terms of the prime lease were expressly incorporated into the sublease between Peabody and Coordination; and (b) since the complaint and the counterclaim seek declaratory relief, it would therefore before expedient and appropriate for this matter to be tried before the court than a jury.
 II.
Coordination offers four principal arguments in opposition to the motion to remove the matter from the jury docket and in support of its claim that any jury trial waiver should not be given effect:
a. The prime lease is of no effect, and since that lease is not valid 101 Broad Street is not entitled to rely on the jury waiver provision in its lease with Peabody to remove this case from the jury docket;
b. The provision for waiver of jury trial goes only to the Prime Lease and the relationship between 101 Broad Street and the Tenant;
c. It had neither knowingly nor intelligently waived its right to a jury trial; and,
d. The motion to remove the case from the jury docket is untimely and, on that basis, should be denied. CT Page 4628
 III.
Coordination claims that 101 Broad Street is not entitled to rely on the jury waiver provision in its lease with Peabody to remove this case from the jury docket. In its pleadings, Coordination has alleged that the lease between 101 Broad Street and Peabody is of no effect. It argues that if that lease is of no effect, then 101 Broad street cannot rely on a provision in that lease to remove the case form the docket.
"The jury waiver provisions may, of course, be held invalid where the instrument in which it is contained is held invalid in toto." Annotation, Validity and Effect of Contractual Waiver of Trial by Jury, 73 A.L.R.2d 1332, 1336 (1960). Coordination cites Wesley v. Brinkley, 198 Misc. 783, 100 N.Y.S.2d 966
(N.Y.C. Mun. Ct. Brooklyn County 1950) in support of its contention. That case held that a lease containing a jury waiver provision was inoperative because of failure to comply with emergency rent laws and the jury waiver clause therefore never went into effect. The landlord's motion to strike from jury docket was denied.
Coordination urges that since there has been no determination on its claim that the prime lease is invalid, the validity of the lease and its waiver provision is still in question, and reliance on the jury waiver provision is inappropriate.
The other parties point out that in Wesley, the lease in question had already been declared invalid in a prior action between the parties. Accordingly, that case is inapplicable to the present proceedings. Moreover, Coordination has offered no evidence to support its claim that the prime lease is invalid. It is the burden of Coordination to prove that the lease is invalid. The mere claim that a document is legally invalid does not make it so. "Whether a contract exists is a question of fact for the court to determine. Randolph Construction Co. v. Kings East Corporation, 165 Conn. 269, 276, 334 A.2d 464 (1973).
Coordination responds in light of its challenge to the validity of the prime lease, the only document that contains a jury waiver provision, it is entitled to a jury trial on its claim. Specifically, it alleges that the prime lease is invalid because it had not been properly executed by 101 Broad Street. This is based on the fact that 2d Stamford New Urban Corporation, which had signed the lease, was a non-existing entity according to the records of the Secretary of State. In support of this claim, Coordination cites International Roofing Corporation v. Van der beer, 43 Misc.2d 93, 250 N.Y.S.2d CT Page 4629 387 (Supreme Court, 1964), here the court ruled that where a challenge had been raised to the validity of a contract which contained a jury waiver provision, the party making such, a challenge was entitled to a jury trial at least on that issue.
International Roofing held that since there was a jury waiver provision in the contract in the event of a breach, allowing a jury trial on all issues "would be in contravention to the agreement sued upon, if it is subsequently decided to be a binding contract." Id. at 389-99. The court then directed that there be a jury trial limited to the issue of whether there as a valid contract, and if there was a valid contract, that there should be a trial without a jury on all the remaining issues
However, the movents have noted that the jury trial waiver clause in International Roofing was specifically described by the court: "the contract in question contained a provision that in the event of breach `the parties hereby waive a trial by jury.'" (emphasis added). The waiver provision in the present matter is much broader, applying to "any matter whatsoever arising out of or in any way connected with this Lease."
Because of these distinctions, this court agrees with the movants that in so far as Coordination appears to be claiming that there should be a separate jury trial regarding its claim that the prime lease is invalid, and that the jury waiver would then apply to the remaining issues, this procedure would be a waste of time, resources, and money, based on a case from a foreign jurisdiction which is inapposite.
 IV.
Coordination claims that the waiver of jury trial goes only to the Prime Lease and the relationship between 101 Broad Street and the Tenants and the waiver provision as set forth in Section 28.04 of the prime lease, relied upon by the movents, does not pertain to the claims between Peabody and Coordination Technology. Section 28.04 of the lease between 101 Broad Street and Peabody does read that:
 To the extent permitted by applicable law, Landlord and Tenant hereby waive trial by jury in any action, proceeding, or counterclaim brought by either against the other on any matter whatsoever arising out of or in any way connected with this Lease, the relationship of Landlord and Tenant, or Tenant's use or occupancy of the Demised Premises, or any emergency or other statutory remedy with respect thereto. CT Page 4630
Because, "The roots of the right to claim a case for the jury docket run deep. The constitution of this state provides that the right of trial by jury shall remain inviolate." Leahey v. Heasley, 127 Conn. 332, 336, 16 A.2d 609 (1940), Coordination notes that a waiver "is not to be inferred without reasonably clear evidence of the intent to waive." Krupa v. Farmington River Power Co., 147 Conn. 153, 156, 157 A.2d 914 (1959), cert. denied, 364 U.S. 506 (1960). See also, Gargiulo v. Delsole,769 F.2d 77, 79 (2d Cir. 1985) ("The right to a jury trial is `fundamental,' and waiver is not lightly to be inferred.") [Citations omitted]. Coordination argues in addition, that any contractual waiver should be strictly construed. See 47 Am.Jur.2d Jury Sec. 86 (1969).
Coordination urges that a narrow reading of the applicable waiver provision would allow a jury trial at least as to the issues between Peabody and Coordination. Despite being incorporated into the sublease, the waiver provision speaks to the relationship between the Landlord/Lessor and the Tenant. Coordination claims that in this case, the "Landlord" has always been 101 Broad Street, and the "Tenant" is Peabody. There are no claims pending between 101 Broad Street and Coordination. The waiver provision therefore does not extend to either Peabody's claims against Coordination or Coordinations counterclaim against Peabody.
However, as the other parties note, Coordination, while acknowledging that the jury waiver provision was incorporated into the sublease, nevertheless argues that the "waiver provision speaks to the relationship between the Landlord/Lessor and the Tenant. In this case, the Landlord has always been 101 Broad Street, and the Tenant is Peabody." This claim ignores Section 2c of the Sublease, where in referring to the incorporated prime lease, specifically states that the term "Landlord" therein shall refer to Peabody, its successors and assigns, and the term "Tenant" therein shall refer to Coordination Technology, its successors and assigns. The court agrees that Coordination's claim in this argument is without
 V.
Coordination agrees that under Connecticut law, parties to a lease may waive their right to a jury trial. Nowey v. Kravitz, 133 Conn. 394, 395, 51 A.2d 495 (1947) and that "[A] binding agreement for such a waiver made in advance of the institution of . . . an action does not violate public policy; and there is no reason why such an agreement should not be given effect." Id. at 396. However, Coordination states that Nowey should be limited to its facts. As to the claim of waiver in the present instance, Coordination states it has neither CT Page 4631 knowingly nor intelligently waived its right to a jury trial.
Coordination claims the waiver provision is buried in the Prime Lease, which is 31 pages long with 39 separate "Articles", each of which contains numerous subparagraphs. The jury waiver appears on page 24 in Article 28 paragraph 28.03.
In National Equipment Rental, Ltd. v. Hendrix, 565 F.2d 255
(2d Cir. 1977), the trial court refused to strike the defendant's demand for a jury trial even though the contract at issue expressly provided for waiver. The 2d Circuit sustained the trial court because the waiver provision was "literally buried in the eleventh paragraph of a fine print, sixteen clause agreement;" which the court later characterized as being "set deeply and inconspicuously in the contract").
Similarly in Dreiling v. Peugeot Motors of America, Inc.,539 F. Sup. 402 (D. Col. 1982), the contract at issue contained a jury waiver provision. The court, noting that the party seeking to strike the jury demand had presented no evidence that the waiver provision was a bargained for term of the contract, as mentioned during negotiations, or was even brought to the attention of the party seeking the jury trial, refused to enforce stating
 A constitutional guarantee so fundamental as the right to a trial by jury cannot be waived unknowingly by mere insertion of a waiver provision on the twentieth page of a twenty-two page standardized form contract.
Id. at 403.
Coordination also cites Cantor v. Techlease, Inc.,59 App.Div.2d 298 N.Y.S.2d 286, 288 (App.Div. 1977), that "[W]e conclude that the plaintiff should not be allowed to incorporate by reference a small-print waiver of such a fundamental right as the right to trial by jury."
On this issue of waiver, Peabody and 101 Broad answer that Coordination knowingly waived its right to a jury trial because it was adequately represented by counsel when it entered into the agreement.
An examination of the lease shows the jury waiver provision is clearly labeled "ARTICLE 28 — Waivers." It does not appear to the court's eye to be "boilerplate" as claimed by Coordination. As the movents note the same counsel, now making this representation that Coordination did not knowingly and intelligently waive it right to a jury trial, also represented Coordination in negotiating the sublease. CT Page 4632
The movents have adequately distinguished the cases cited by Coordination.
The National Equipment Rental case holding was based in part on fact that objecting party had desired to consult an attorney at the time of executing the contract but was dissuaded by the other party from doing so. Also the court there found, since the defendant, Hendrix, was seeking to refinance loans on construction equipment to reduce monthly payments which he could no longer afford, it was clear that he "did not have any choice but to accept the . . . contract as written if he was to get badly needed funds," and that there was therefore a "gross inequality in bargaining power" between the parties. National Equipment, at 258.
The Dreiling court also found that the defendants had no choice but to accept the contract as written, and that there was thus "inequality in relative bargaining positions." The court based its decision on the fact that the "plaintiffs had little if any, opportunity to negotiate the provisions [of the contract]. Absent proof to the contrary such and inequality in relative bargaining positions suggests that the asserted [jury] waiver was neither knowing nor intentional." Id. at 403.
In Cantor, the court found a jury waiver provision inapplicable in part because "the waiver provision specifically provided only that the `lessor and the lessee' waived a jury trial." Id. at 287, Here, the sublease executed between Peabody and Coordination specifically states that "[t]he term `Landlord' [in the prime lease] shall refer to Peabody and the term `Tenant' [in prime lease] shall refer to Coordination Technology." Furthermore, the dissent noted that the majority opinion was based upon reliance on a clearly distinguishable case — Shapiro v. Marstone Distributors, Inc., 337 N.Y.S.2d 928 (N.Y.App.Div. 1972) — where it was held that a jury waiver clause did not bind a mere guarantor of lease. Cantor, 398 N.Y.S.2d at 288 (Lathan, J., dissenting).
There has been no information presented to this court that Coordination was not represented during negotiations, that the lease was not negotiated with care, that Coordination was on unequal footing and forced to accept the sublease as tendered, or that it was without choice but to accept. This court agrees with 101 broad Street's claim that the present instance is more analogous to the circumstances found in the case of N. Feldman 
Son, Ltd. v. Checkers Motor Corp., 572 F. Sup. 310 (S.D.N Y 1983), than to the cases cited by the Coordination. In Feldman the plaintiff sought to resist compliance with the jury waiver clause, contending it had no representation of counsel, and that the jury waiver was "boilerplate" and therefore unenforceable. CT Page 4633 The court upheld the waiver. "Although unrepresented at the time of the contract signing, plaintiff does not fit into the category of individuals with `no real choice' but to sign the waiver provision. See, National Equipment Rental v. Hendrix,565 F.2d at 258." Id. at 313.
Coordination's claim that the waiver cannot be enforced because it neither knowingly nor intelligently waived its right to a jury trial cannot be sustained.
 VI.
Finally, Coordination asserts that the motion to remove the case from the jury docket is untimely and therefore should be denied. Coordination bases this on the claim 101 Broad Street moved for removal of this case from the jury docket nearly three years after the filing of the jury claim slip.
Under similar circumstances, Coordination claims, courts have uniformly held that where a party does not invoke a jury waiver provision in a timely manner, it waives the right to do so. Although there is no Connecticut case on this point, New York cases have refused to enforce a jury waiver provision where the party seeking to strike the jury claim failed to act within as short as one year from the filing of the claim.
In Arkin v. Sig Heller Co. 197 Misc. 1084, 99 N.Y.S.2d 175
(Sup.Ct. App. D. 1st Dep't 1950) the landlord waited fourteen months to file the motion to strike the case from the jury docket pursuant to a waiver provision in a lease. The court denied the motion as untimely:
 [T]he constitutional right of a jury trial should not be taken from a party lightly. Bearing in mind that the waiver clause in leases is of the landlord's creation it seems to me that no undue burden is put on the landlord in requiring him to invoke the waiver in the early stages of a litigation. If he remains inert, as the defendant did in this case, no equity in his favor calls for help from the court.
Id, 99 N.Y.S.2d at 177.
Similarly, in Livelastic Suspender and Garter Co. v. Walker, 99 N.Y.S.2d 174, 175 (Sup.Ct. N.Y. County 1950), a motion to strike from the jury calendar was filed almost a year after the filing of the jury claim. The court stated that "the defendant has waived such rights as it might have by virtue of the provision in the lease by him relied on." CT Page 4634
In Moskowitz v. Keith Sales Corp., 99 N.Y.S.2d 173 174 (Sup.Ct. N.Y. County 1948), the motion to strike from the jury docket was filed less than two years after the jury claim was filed. The court held that such motion was untimely. The trial court stated: "I do not think the waiver in question should be employed by the defendant as a threat, to be asserted at its whim or pleasure. Having failed to avail itself of the waiver [for 21 months], it must be deemed to have abandoned it and to have assented to a trial by a jury."
For nearly three years, Coordination urges that it has proceeded on the assumption that its claim for the jury docket would not be challenged, and that the case would be tried before a jury. Coordination claims the removal of its claim for a jury at this date, rather than at or near the time of the filing of the jury claim, would serve only to prejudice it. See, Arkin, supra at 177 ("The plaintiffs were prejudiced, for a prompt motion would have given them a much earlier trial on the non-jury calendar. A defendant should not be allowed to stand by while a case is working its way up on the jury calendar and when it is about to be reached on that calendar have it relegated to the non-jury calendar.")
In addressing this claim, Peabody and 101 Broad Street note that Coordination has cited no Connecticut authority to support its proposition, but instead relies on New York authority.
However, even in those New York cases relied upon by Coordination Technology the conclusions that the motion to strike the action from the jury docket should be denied were based upon findings that the party claiming the matter to the jury docket had been pre judiced by the other party's delay. In both Moskowitz v. Keith Sales Corp. and Livelastic Suspender Garter Co. v. Walker, the parties moving to strike the matters from the jury docket had waited until after the cases had appeared on a ready jury calendar. In Arkin, et al. v. Sig Heller Co., Inc., the court held that the party seeking a jury trial would have been prejudiced if the case were removed from the jury calendar:
 for a prompt motion would have given them a much earlier trial on the non-jury calendar, A defendant should not be allowed to stand by while a case is working its way up on the jury calendar and when it is about to be reached on that calendar have it relegated to the non-jury calendar.
Id, at 177.
On the other hand, in Fordham University v. Manufacturers Hanover Trust Co., 534 N.Y.S.2d 993 (N.Y.App.Div. 1988), the CT Page 4635 court allowed a motion to strike a jury demand since "[u]nlike cases cited by plaintiff, these are not circumstances in which a matter was permitted to remain on a jury trial calendar awaiting assignment only to have the jury waiver asserted as the time for trial drew near." Id. at 994-95.
Coordination does claim prejudice in the delay, before attempting to strike the jury claim, until the sublease had expired,. It argues that if 101 had insisted on a court trial at the beginning of this litigation, the dispute between the parties would have been decided at least three years ago. If the court had issued a judgment against Coordination, it could have taken certain actions to lessen what it would suffer by such a decision, such as finding a tenant for the space, if in fact it had to pay rent for the space. In searching for a tenant, Coordination would have been competing directly with 101 Broad Street, which had other vacant space to rent.
Moreover, Coordination claims the Connecticut Supreme Court has acknowledged that a party can waive a particular type of dispute resolution if that party does not timely exercise that right. For example, a contract may contain an arbitration clause. If a party to a contract which contains an arbitration provision remains silent while the other party pursues a court action, that party may have been found to have waived the right to insist upon arbitration. See, Batter Building Materials Supply Company v. Kirschner, 142 Conn. 1, 11, 110 A.2d 464
(1954) ("unjustifiable delay in seeking arbitration may warrant a finding of waiver.")
101 Broad Street and Peabody assert they have not waived their right to enforce the jury waiver provision. Coordination Technology failed to note that a nonjury trial claim was filed just two and one-half months after the pleadings were closed. The delay was substantially caused by the failure of the court to place the case on any trial list. As soon as it became apparent that the case was on the dormancy list, the motion was filed. As soon as it became apparent that Coordination was resisting a court trial, the motion was reclaimed.
It appears to this court that the claim of prejudice put forth by Coordination as to why a court trial would have been appropriate at an earlier time but not appropriate now is sophism, since the burden of damage mitigation lies elsewhere, even if Coordination's claim of constructive eviction were not upheld.
Batter Building Materials Co., et al. v. Kirschner, et al.,142 Conn. 1, 100 A.2d 464 (1954), is distinguishable from the present case for two reasons. It does not involve a jury CT Page 4636 trial waiver provision. Secondly, the party claiming that the arbitration clause could not be enforced did so not only on the grounds that the other party waited too long to enforce it, but also on the grounds that improper procedure had been used.
This court does not see such prejudice to Coordination as would warrant it in ignoring the contractual waiver entered into by the parties.
The motion to remove the matter from the jury docket is granted.
NIGRO, J.