[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE FROM JURY LIST AND MOTION FOR SUMMARY JUDGMENT
On November 2, 1992, the plaintiff, Connecticut National Bank, filed a two count complaint to collect on two promissory notes allegedly owned by the plaintiff in the amounts of $60,000.00 (note 1) and $90,000.00 (note 2). Both notes were allegedly executed in favor of the plaintiff by defendant Attorney F. Woodward Lewis, Jr. and endorsed by defendant Lewis Services, Inc. as guarantor. The plaintiff alleges that the notes are in default and that, despite a demand for payment, the defendants have failed or neglected to satisfy the debts.
On August 16, 1993, the defendants filed an answer, denying the allegations contained in the plaintiff's complaint, and three special defenses in which the defendants allege that the notes are void for (1) fraud in the inducement; (2) violations of the Federal Tying Act, 12 U.S.C. § 1972, and General Statutes § 52-564; and (3) lack of mutuality and/or consideration for violating General Statutes § 42a-2-315. On September 1, 1993, the defendants filed an amended five count counterclaim in which they allege in the first count breach of contract, in the second count fraudulent inducement, in the third count conversion, in the fourth count CT Page 5383 a violation of 12 U.S.C. § 1972, and in the fifth count a violation of the Connecticut Unfair Trade Practices Act [CUTPA], General Statutes § 42-110a et seq.
On November 4, 1993, the plaintiff filed a reply and answer denying the material allegations of the defendants' special defenses and amended counterclaim, respectively; in addition, the plaintiff filed three special defenses directed to all counts of the defendants' amended counterclaim. In these three special defenses, the plaintiff asserts the defenses of statute of frauds, lack of agreement, and set-off. On November 9, 1993, the defendants, by reply, denied the allegations of the plaintiff's three special defenses to the defendants' amended counterclaim, thereby closing the pleadings.
On December 30, 1993, the plaintiff filed a motion to strike the present case from the jury list. On January 18, 1994, the defendants filed a memorandum in opposition to the motion to strike from the jury list, to which the plaintiff filed a reply memorandum on January 24, 1994. On January 31, 1994, the defendants filed a supplemental memorandum in opposition to the motion to strike form the jury list, to which the plaintiff filed reply memorandum of law on February 2, 1994.
On December 30, 1994, the plaintiff filed a motion for summary judgment, along with a supporting memorandum of law, as to the defendants' special defenses and five count amended counterclaim. On January 21, 1994, the defendants filed a memorandum of law, along with several supporting documents, in opposition to the motion for summary judgment; both the plaintiff and defendants have filed supplemental memoranda of law in relation to the plaintiff's motion for summary judgment.
A. Motion to Strike from the Jury List
On November 5, 1993, the defendants claimed the case for the jury list. The plaintiff has filed a motion to strike the case from the jury list on the ground that the defendants have waived their right to a jury trial by operation of the 17th paragraph contained in each of the promissory notes. Paragraph 17, which is printed in bold text on the face of each note, reads CT Page 5384
 Waiver of Trial By Jury: Borrower and Other Obligors irrevocably waive all right to a trial by jury in any proceeding hereafter instituted by or against the Borrower or Other Obligors in respect of this note or collateral which may secure this note.
The plaintiff argues that the defendants effectively have waived their right to jury trial on both notes, based upon the fact that the defendants have not claimed that they were unaware of the presence or effect of the jury waiver clause; rather, the defendants have raised legal arguments as to the validity of the two promissory notes themselves. The defendants argue that proof of the allegations contained in their special defenses and amended counterclaim as to the notes' voidness would render the both notes, including the jury waiver clauses, unenforceable.
The right to trial by jury is guaranteed by article first, § 19, of the Connecticut constitution. The Connecticut Supreme Court has held, however, that
 the right to a jury trial is a right which, like other rights, may be waived but it is a right the waiver of which is not to be inferred without reasonably clear evidence of intent to waive. . . . Whether a party has waived his right to a jury trial presents a question of fact for the trial court.
(Citations omitted.) Krupa v. Farmington River Power Co.,147 Conn. 153, 156, 157 A.2d 914, cert. denied, 346 U.S. 506,81 S.Ct. 281, 5 L.Ed.2d 258 (1960).
"`The jury waiver provisions may . . . be held invalid where the instrument in which it is contained is held invalid in toto.'" Peabody International v. Coordination Technology,Inc., Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 10 34 18 (May 18, 1992, Nigro, J.), CT Page 5385 quoting Annot., Validity and Effect of Contractual Waiver of Trial by Jury, 73 A.L.R.2d 1332, 1336 (1960). "Whether a contract exists is a question of fact for the court to determine." Randolph Construction Co. v. Kings EastCorporation, 165 Conn. 269, 276, 334 A.2d 464 (1973). It is the defendants' burden to present facts proving that the contract is invalid; if this burden is met, the defendants may be released from the effects of the jury waiver clause.Peabody International v. Coordination Technology, Inc., supra (allegations of voidness of lease creates no right to separate jury trial on lease's validity in order to determine if jury waiver clause contained therein should be given effect).
The defendant cites Gotham Credit Corporation v.Brancaccio, 83 N.Y.S.2d 341 (N.Y. City Ct. 1948), for the proposition that a defendant is entitled to a jury trial, even though the note contains a jury waiver clause, where there has been an allegation that the note is void due to fraud. The allegations of fraud in Gotham, however, were that the defendant/maker could not speak or read English and, consequently, believed she was signing a receipt of payment. These allegations, therefore, went to the issues of whether the defendant voluntarily and knowingly relinquished the right to trial and whether the defendant even realized a contract was formed between the parties. Id., 342.
Unlike the defendant in Gotham Credit Corp., supra, the defendants in the present case do not allege that they were unaware of the legal effect of the promissory notes or that they were unaware of the jury waiver clause in the promissory notes they signed; instead, the defendants have merely alleged that the promissory notes should be declared void due to fraud. In light of the court's statements in PeabodyInternational v. Coordination Technology, Inc., supra, these allegations alone create no right to a separate jury trial as to the validity of the promissory notes. The presence of the clause is conspicuous, as it is the only clause printed in bold text on the face of each of the one-page promissory notes signed by defendant attorney Lewis. (See Exhibits A B, attached to Plaintiff's complaint.) Accordingly, the plaintiff's motion to strike the case from the jury list is granted.
B. Motion for Summary Judgment
CT Page 5386
 Practice Book § 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts.
(Citations omitted; internal quotation marks omitted.)Connell v. Colwell, 214 Conn. 242, 246-47, 571 A.2d 116
(1990).
The plaintiff has moved for summary judgment on the complaint, relying on copies of the promissory notes, which are attached to the complaint, and the defendants, signatures thereon. Through this motion, the plaintiff challenges the legal sufficiency of the defendants' counterclaim and special defenses; the plaintiff argues that it is entitled to judgment as a matter of law because it has established the defendants' liability on the notes and the defendants have not asserted any valid defenses thereto.
General Statutes § 42a-3-307 (2) (Rev. to 1991)[1] provides that "[w]hen the signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense." (Emphasis added.) General Statutes § 42a-3-307 (1) (Rev. to 1991) provides that "[u]nless specifically denied in the pleadings each signature on an instrument is admitted." The defendant have not specifically challenged the execution of the notes or CT Page 5387 the validity of the signatures in the notes, nor have they asserted a defense of payment. Therefore, the plaintiff has made a sufficient showing that entitles it to recover on the notes, unless the defendants allege and prove other valid defenses. Connecticut Bank Trust Co. v. Dadi, 182 Conn. 530,531, 438 A.2d 733 (1980).
1. Motion for Summary Judgment on Special Defenses
The plaintiff argues that the defendants' special defenses are legally insufficient. Although, "[t]he Superior Courts are almost in unanimous agreement that a motion for summary judgment as to a special defense is improper since Practice Book Section 379 makes no provision for it"; Benjaminv. Nunes, 9 Conn. L. Rptr. 143 (May 21, 1993, McDonald, J.) (and cases cited therein); a motion for summary judgment as to a special defense may be proper when the pleadings are closed and the motion challenges the legal sufficiency of the special defenses. People's Bank v. BMI Industries, 3 CSCR 450 (April 26, 1988, Hennessey, J.); see also Boucher Agency, Inc. v.Zimmer, 160 Conn. 404, 409, 279 A.2d 540 (1971). Therefore, the court may consider the motion for summary judgment asserting the legal insufficiency of the defendants' special defenses. See People's Bank v. BMI Industries, supra.
When the legal sufficiency of a pleading is challenged, the court must construe the pleading "in the manner most favorable to sustaining its legal sufficiency." Bouchard v.People's Bank, 219 Conn. 465, 471, 594 A.2d 1 (1991). Where the facts provable under the allegations of the pleading would not support a cause of action or defense, the pleading is legally insufficient. Ferryman v. Groton, 212 Conn. 138, 142,561 A.2d 432 (1989).
a. Defendants' First Special Defense
The defendants' first special defense alleges merely that are void because the plaintiff fraudulently induced the defendant to borrow money from the plaintiff. "[T]he legal conclusions or opinions stated in the special defense are not deemed admitted, but rather must flow from the subordinate facts provided." County Federal Savings LoanAssn. v. Eastern Associates, 3 Conn. App. 582, 586,491 A.2d 401 (1985), citing McAdam v. Sheldon, 153 Conn. 278, 283,216 A.2d 193 (1965). "[T]he mere allegation that a fraud has been CT Page 5388 perpetrated is insufficient; the specific acts relied upon must be set forth in the complaint [or defense]." Maruca v.Phillips, 139 Conn. 79, 81, 90 A.2d 159 (1952). The defendants' first special defense does not set forth specific allegations of fraudulent acts, but instead contains a bare legal conclusion of fraud; therefore, the plaintiff's motion for summary judgment is granted as to the defendants' first special defense.
b. Defendants' Second Special Defense
The defendants' second special defense merely alleges that terms of the promissory notes violate 12 U.S.C. § 1972[2]
and General Statutes § 52-564[3], and are therefore void. "The purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action. Practice Book § 164." (Emphasis added.) Grant v.Bassman, 221 Conn. 465, 472-73, 604 A.2d 814 (1992). "To survive a motion to strike, [or, as here, a motion for summary judgment; see People's Bank v. BMI Industries, supra]; the special defense must provide factual allegations as to the essential elements of the defense." Buddington v. Winthrop,10 Conn. L. Rptr. 358, 361 (November 12, 1993, Zoarski, J.), citing County Federal Savings Loan Assn. v. Eastern Associates, supra.
The defendants' second special defense alleges a mere legal conclusion and fails to allege any facts constituting a violation of 12 U.S.C. § 1972[4] or General Statutes § 52-564. Accordingly, the plaintiff's motion for summary judgment as to the defendants, second special defense is granted.
c. Defendants, Third Special Defense
In their third special defense, the defendants allege that the plaintiff's notes are void because the interest rate in the notes "was not set by reference to an independent third party standard governed by the marketplace, but was arbitrarily varied at will by said bank in violation of C.G.S. § 42a-2-305." The plaintiff correctly argues that Article 2 of the U.C.C. applies only to transactions in goods; see General Statutes § 42a-2-102; and that General Statutes § 42a-2-305 applies to open price terms in contracts for the sale of goods. Id. CT Page 5389
Negotiable instruments are governed by Article 3 of the U.C.C. See General Statutes §§ 42a-3-101 to 42a-3-103. General Statutes § 42a-3-112 (b) provides the following:
 (b) Interest may be stated in an instrument as a fixed or variable amount of money or it may be expressed as a fixed or variable, rate or rates. The amount or rate of interest may be stated or described in the instrument in any manner and may require reference to information not contained in the instrument. . . .
(Emphasis added.)
In the present case, the promissory notes provide that interest shall be payable at 1.00% above the bank's base rate. General Statutes § 42a-3-112 allows a promissory note to establish the interest payable based on information not contained in the note itself. Therefore, the third special defense, insofar as it alleges a violation based on General Statutes § 42a-2-305, is legally insufficient. The plaintiff's motion for summary judgment as to the defendants' third special defense is granted.
2. Motion for Summary Judgment on Amended Counterclaim
"The summary judgment rules apply to counterclaims . . . and any party can move for summary judgment upon a counterclaim . . . as if it were an independent action. Section 379, Connecticut Practice Book" Schofield v. BicCorp., 3 Conn. L. Rptr. 229 (January 31, 1991, Fuller, J.).
a. First Count: Breach of Contract
In the first count of the amended counterclaim, the defendants allege an oral agreement between the parties to the effect that the defendants would continue to maintain their accounts with the bank and that the bank would "roll-over" the notes at three to five year intervals until the notes were paid in full. The defendants also assert that they were to designate the plaintiff as payee of the proceeds of certain annuity payments owned by the defendants. The defendants CT Page 5390 allege that the bank failed to roll-over the loans in contravention of the agreement, causing the defendants to suffer damages.
The plaintiff has moved for summary judgment, arguing that it is entitled to judgment as a matter of law on the first count of the amended counterclaim because the alleged oral agreement violates the statute of frauds, General Statutes § 52-550. The plaintiff argues that the notes expressly provide for full payment on May 1, 1992, and August 1, 1992, respectively, or on demand, whichever comes first, and do not reference any additional agreement.
General Statutes § 52-550 provides that
 [n]o civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged: . . . (6) upon any agreement for a loan in an amount which exceeds fifty thousand dollars.
"The statute of frauds bars actions where there is not a sufficient memorandum in writing signed by the party charged."Booth v. Flanagan, 23 Conn. App. 579, 584, 583 A.2d 148
(1990); see also Breen v. Phelps, 186 Conn. 86, 93,439 A.2d 1066 (1982). The loans at issue, each in excess of $50,000.00, are covered by General Statutes § 52-550 (a)(6).
In opposition to the motion for summary judgment, the defendants have not asserted the existence of a written memorandum of the alleged contract, but instead rely on the doctrine of part performance to prove the alleged oral contract. In support of this claim, the defendants claim that they
 continued to maintain numerous accounts with the plaintiff, assigned the rents from three properties and assigned annuity payments to the bank . . . and said annuities were assigned by one document for a period of sixteen years. . . . Standing alone assigning said CT Page 5391 annuities for a sixteen year period when the notes were only for three years would constitute partial performance.
(Defendants' Memorandum in Opposition to Summary Judgment, p. 9.) In addition, the defendants have submitted the affidavit of defendant Lewis, wherein he states that there was an oral contract, as well as various letters from Lewis to the annuity managers directing that annuity payments should be made to the plaintiff. (See Defendants' Exhibits C, D, and L.) The defendants have also submitted a document purporting to be an assignment of annuities in favor of the plaintiff; this document, however, was executed one year prior to the execution of the notes at issue in the present case. (Defendants' Exhibit H.) The defendants were not parties to this purported assignment of annuities, although it appears if that defendant Lewis witnessed the document. (Defendants' Exhibit H.)
"Contracts that would otherwise be unenforceable without writing sufficient to comply with the Statute of Frauds, General Statutes § 52-550, are nonetheless enforceable because of part performance if two separate but related criteria are satisfied." H. Pearce Real Estate Co. v. Kaiser, 176 Conn. 442,443, 408 A.2d 230 (1979).
 The acts of part performance generally must be such as are done by the party seeking to enforce the contract, in pursuance of the contract, and with the design of carrying the same into execution, and must be done with the assent, express or implied, or the knowledge of the other party, and be such acts as alter the relations of the parties. . . . The acts must also be of such a character that they can be naturally and reasonably accounted for in no other way than by the existence of some contract in relation to the subject matter in dispute.
(Emphasis added; citations omitted; internal quotation marks omitted.) Ubysz v. DiPietro, 185 Conn. 47, 54, 440 A.2d 830
(1981). CT Page 5392
The acts relied on by the defendants and the evidence submitted in support of their claims are not of "such a character that they can be naturally and reasonably accounted for in no other way than by the existence of the alleged oral contract." Ubysz v. DiPietro, supra. The act of maintaining accounts with a bank in no way evidences an oral contract to disregard the terms of a promissory note. The evidence set forth by the defendants regarding the assignment of the annuities is unavailing, because, contrary to the defendants' assertions that the assignments were irrevocable, the evidence indicates that the assignment of annuity payments was revocable at the defendants' will. (See Defendants' Exhibits C, D, and L.) This evidence of the designation of the proceeds of the annuity contract to the plaintiff, at most, indicates the manner in which the defendants' sought to pay the interest and principal charges for the notes, and does not "reasonably and naturally" account for the existence of the alleged oral contract. In addition, the assignment of annuities document submitted by the defendants was executed prior to the execution of the promissory notes, involves a transaction to which the defendants were not a party, and does not specifically reference any accounts or loans involved in the present case. (Defendants' Exhibit H.) Accordingly, the plaintiff's motion for summary judgment as to the first count of the defendants' amended counterclaim is granted because the defendants have not substantiated their claim that there is a genuine issue of material fact as to part performance.
b. Second Count: Fraudulent Inducement
In count two of the amended counterclaim, the defendants reallege that the plaintiff gave assurances to the defendants that it would renew the notes until they were paid off, provided the defendants maintained their accounts at the bank and assigned the annuities to the bank. The defendants allege that the plaintiff had reason to believe that these representations would not be honored at the time they were made and that these representations were made under circumstances where it was reasonable for the defendants to rely on the statements. The defendants allege that they were induced to rely on the statements to their detriment in that they executed the promissory notes.
In support of its motion for summary judgment as to the CT Page 5393 second count of the amended counterclaim, the plaintiff argues that the second count is legally insufficient because the defendants have not properly alleged the requisite elements of fraud. Specifically, the plaintiff charges that the defendants have failed to allege a misrepresentation of an existing or past fact.
 The essential elements of an action in fraud, . . . are: (1) that false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury.
(Citations omitted.) Miller v. Appleby, 183 Conn. 51, 54-55,438 A.2d 811 (1981).
 Although the general rule is that a misrepresentation must relate to an existing or past fact, there are exceptions to this rule, one of which is that a promise to do an act in the future, when coupled with a present intent not to fulfil the promise, is a false representation.
(Citations omitted.) Paiva v. Vanech Heights ConstructionCo., 159 Conn. 512, 515, 271 A.2d 69 (1970).
In the second count of the amended counterclaim, the defendants have alleged that the plaintiff's agent promised that the bank would roll-over the loans with the intent and knowledge that the bank would not perform the promise in the future. Therefore, the defendants have pleaded the necessary elements for a claim of fraud. Accordingly, the plaintiff's motion for summary judgment on the second count of the defendants' amended counterclaim is denied.
c. Third Count: Conversion
In the third count of their amended counterclaim, the defendants allege that the plaintiff held three months of annuity payments "without cashing [the annuity checks] and/or CT Page 5394 ever applying said funds" to the loan payments, and thereby converted the funds "in a clandestine manner in violation of C.G.S. § 52-564." The defendants further allege that they were deprived of the use of the funds. In addition, the defendants reallege that the plaintiff misapplied the annuity payments "by charging a fluctuating interest rate higher than 1% above the base rate and misapplied the . . . automatic annuity payments to make artificially high payments and overpayment on the said special account for the three notes."
In support of its motion for summary judgment as to the third count of the amended counterclaim, the plaintiff argues that the defendants have not alleged the necessary facts to state a cause of action for conversion.
"Conversion occurs when one, without authorization, assumes and exercises the right of ownership over property belonging to another, to the exclusion of the owner's rights." (Citations omitted; internal quotation marks omitted.)Luciani v. Stop Shop Cos., 15 Conn. App. 407, 409,544 A.2d 1131 (1988). There exist two "general classes" of conversion: "(1) that in which possession of the allegedly converted goods is wrongful from the onset; and (2) that in which the conversion arises subsequent to an initial rightful possession." (Citation omitted.) Id., 410. Specifically, the second "class" of conversion exists where
 the possession, originally rightful, becomes wrongful by [1] reason thereafter of a wrongful detention, or [2] a wrongful use of the property, or [3] the exercise of an unauthorized dominion over the property. In the last two groups of this class, the wrongful use and the unauthorized dominion, constitute the conversion; therefore no demand for the return of the personal property is required. (Emphasis added.) Demand is only required in the "detention" scenario because, by definition, a rightful possession cannot become a "detention" until a possessor fails to comply with a request to quit possession made by the rightful owner. CT Page 5395
(Citations omitted; internal quotation marks omitted.)Luciani v. Stop Shop Cos., Id., 411.
The defendants allege that the plaintiff retained control over the defendants' annuity payments for three months without applying the proceeds to the loans, wrongfully used the defendants' monies by charging excessive interest at a fluctuating rate in violation of the promissory notes, and misapplied the annuity payments in order to increase the interest charges, all to the exclusion of the defendants' rights in the proceeds. The defendants have alleged the necessary elements for a claim of conversion. Therefore, the plaintiff's motion for summary judgment on the third count of the defendants' amended counterclaim is denied. See Morrisseyv. Connecticut National Bank, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 50 60 35 (February 23, 1991, Hennessey, J.).
 d. Fourth Count: Tying Arrangement in Violation of 12 U.S.C. § 1972
In the fourth count of the amended counterclaim, the defendants reallege the allegations of the first count and allege that the plaintiff violated 12 U.S.C. § 1972. The gravamen of the defendants' allegations is that the plaintiff required the defendants to assign annuity payments for a sixteen year period to the plaintiff as security for the loan. In addition, the defendants allege that the bank violated its fiduciary duty to the defendants and profited thereby, in violation of 12 U.S.C. § 1972 (2)(F)(ii) and (iii).
In support of its motion for summary judgment as to the fourth count of the amended counterclaim, the plaintiff argues that there is no genuine issue of material fact as to the allegations asserted therein and that, therefore, it is entitled to judgment on the fourth count as a matter of law. To sustain its burden of proof, the plaintiff relies on the note, executed by the defendants, and leaves the defendants to their burden of proof to show a valid defense.
The defendants argue that the affidavits and documentary material submitted in opposition to the motion for summary judgment indicate that the plaintiff required the defendants to assign to the plaintiff several annuity contracts payable to defendant Lewis. The defendants assert that this CT Page 5396 assignment was designed to secure additional security for the notes, in violation of 12 U.S.C. § 1972. Defendant Lewis also corroborates this allegation in his affidavit.
A review of the documents submitted by the defendants indicates that the defendants instructed the annuity company to pay the proceeds of the annuity contracts to the plaintiff and that these instructions were revocable. Defendant Lewis asserts in his affidavit and brief that the "assignments of the annuities" were irrevocable; the defendants, own exhibits indicate, however, that the plaintiff was termed a "revocable payee of the benefits of [the annuity] contract" and that the monthly payments were payable to the plaintiff only until the annuity company was advised otherwise by the beneficiary. (Defendants' Exhibit C.)
"To establish the existence of a material fact, it is not enough for the party opposing summary judgment merely to assert the existence of a disputed issue. . . . Such assertions are insufficient regardless of whether they are contained in a complaint or in a brief." (Citations omitted.)Trotta v. Branford, 26 Conn. App. 407, 412, 601 A.2d 1063
(1992). Accordingly, the plaintiff's motion for summary judgment on the fourth count of the amended counterclaim is granted.
e. Fifth Count: CUTPA Violations
In the fifth count of the defendants' amended counterclaim, the allegations of the four prior counts are realleged and the defendants also allege a violation of CUTPA, General Statutes § 42-110a et seq. The plaintiff moves for summary judgment on the grounds that CUTPA does not apply to banks or, alternatively, that the defendants have not pleaded facts sufficient to constitute a violation of CUTPA.
Although there is a split of authority in the superior court concerning whether banking activities are within the scope of CUTPA, this court has addressed the issue several times and has adopted the majority view that "`[t]he issue of whether CUTPA applies to banks ultimately depends upon the type of activities in which the bank is engaged. When a bank is engaged in consumer-oriented activities, CUTPA should apply."' (Emphasis in original; citations omitted.) Gohslerv. Fleet Bank, 8 CSCR 1113 (September 23, 1993, Hennessey, CT Page 5397 J.) (list of prior cases by court, Hennessey, J., holding that CUTPA applies to banks for consumer related activities).
Construing the allegations contained in the fifth count of the amended counterclaim in a manner most favorable to sustaining its legal sufficiency, the court finds that the defendants have alleged various fraudulent activities on the part of the bank. However, the fifth count of the amended counterclaim incorporates allegations from the first count of the amended counterclaim, in which the defendants allege that the loans involved in this litigation are commercial loans for the defendants' business enterprises. The present case arises out of a commercial loan transaction. Thus, the plaintiff was not engaged in consumer-oriented activities. See Gohsler v.Fleet Bank, supra. Accordingly, the plaintiff's motion for summary judgment on the fifth count of the defendants' amended counterclaim is granted.
Mary R. Hennessey, Judge
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.]
CT Page 5403