FRANK KRUPA ET AL. *v.* FARMINGTON RIVER POWER COMPANY

BALDWIN, C. J., KING, MURPHY, MELLITZ and SHEA, Js.

154

Argued October 9—decided December 30, 1959

*Thaddeus Maliszewski,* for the appellants (plaintiffs).

*Ralph C. Dixon,* with whom was *Morris Tyler,* for the appellee (defendant).

MURPHY, J. According to the allegations of the complaint, the plaintiffs' tobacco farm in Windsor was extensively damaged during the disastrous floods of August, 1955, when a dike and flashboards which the defendant maintained in conjunction with a dam on the Farmington River gave way. The issues were closed, and the trial of the case was

started before the court *(Comley, J.)* without a jury on September 19, 1957. With the permission of the court, the plaintiffs on September 20 filed an amendment to their complaint which added three specifications of negligence. The defendant filed an answer to the amendment on the same day, and the trial proceeded. Evidence was introduced which caused the trial judge to disqualify himself from continuing with the trial. A mistrial was declared, and the trial judge indicated that the case could be reassigned for trial on November 5, 1957, before another judge. To this all parties agreed. On September 25, the plaintiffs claimed the case for a jury trial. On October 5, the defendant filed a motion to strike from the jury docket. The court *(Shapiro, J.)* granted the motion on the theory that the plaintiffs had waived their right to a jury trial by continuing with the trial before Judge Comley after the complaint had been amended, and had agreed, after the mistrial, to the reassignment of the case for trial before another judge. Thereafter, the case was tried by Judge Cotter, who rendered judgment for the defendant. The plaintiffs have appealed. The first claim of error which we shall discuss concerns the granting of the motion to strike from the jury docket.

The case was returned to the Superior Court on the first Tuesday of September, 1956. Within thirty days after the return day, the plaintiffs filed two separate and distinct amendments to the complaint. This was their right. General Statutes § 52-128; Practice Book § 93. The defendant filed an answer and a special defense. The pleadings were closed by the plaintiffs' reply to the special defense. No claim for a jury trial was filed by either party prior to the start of the court trial before Judge Comley on

these pleadings. Had the plaintiffs disclosed to the trial judge, when they requested and received permission to file the amendment of September 20, 1957, that they then intended to claim the case for the jury and thus delay the trial, the court would have been within its discretion in refusing the amendment. *Smith* v. *New Haven,* 144 Conn. 126, 132, 127 A.2d 829; *Cook* v. *Lawlor,* 139 Conn. 68, 72, 90 A.2d 164; see *Beauton* v. *Connecticut Light & Power Co.,* 125 Conn. 76, 80, 3 A.2d 315. After the amendment and the answer thereto were filed, the trial continued, and additional evidence was presented until the mistrial was declared. In *Noren* v. *Wood,* 72 Conn. 96, 98, 43 A. 649, we said that the right to a jury trial is a right which, like other rights, may be waived but that it is a right the waiver of which is not to be inferred without reasonably clear evidence of the intent to waive. See *Leahey* v. *Heasley,* 127 Conn. 332, 336, 16 A.2d 609. Whether a party has waived his right to a jury trial presents a question of fact for the trial court. *Stevens* v. *Mutual Protection Fire Ins. Co.,* 84 N.H. 275, 283, 149 A. 498. Upon the facts in this case, we are constrained to hold that the court did not commit reversible error in striking the case from the jury docket.

The assignments of error, other than those directed to the striking of the case from the jury docket, run the full gamut. They include two rulings on evidence; misconstruction by the court of three of the plaintiffs' claims of law; failure to reach the conclusions suggested by the plaintiffs in sixteen paragraphs of the draft finding; overruling the plaintiffs' claims of law, as set forth in six paragraphs of the finding, to the extent that the claims were correctly stated in those paragraphs; erroneous conclusions in five paragraphs of the finding;

failure to adopt the conclusions set out in two other paragraphs of the draft finding; refusing to find facts in accordance with thirty-two paragraphs of the draft finding; finding the facts in eight paragraphs of the finding without evidence; and finding a fact contrary to the evidence. Such a wholesale attack upon the finding is rarely productive of beneficial results. It has been criticized repeatedly, but some counsel persist in the practice. *Bent* v. *Torrell,* 139 Conn. 744, 747, 97 A.2d 270, and cases cited. The skilled hunter prefers the rifle to the blunderbuss.

The plaintiffs based their cause of action in negligence, breach of contract and nuisance. They alleged negligence in the construction and maintenance of the dikes adjacent to the dam and the flashboards on top of it; that the dam was originally constructed, and subsequent alterations made, without permission of the proper authorities and in violation of law; and that a dike constructed under a 1949 agreement with the plaintiffs was not in accordance with that agreement. The defendant's answer was in effect a general denial with a special defense that the plaintiffs' damages resulted from an act of God.

In 1925, the defendant constructed the Rainbow dam on the Farmington River in Windsor. At that time, the supervision of such structures reposed in the state board of civil engineers. Rev. 1918, § 3059. No dam could be constructed or altered without a certificate from a member of the board. Upon completion of the work, a certificate of final approval by the board member was to be recorded in the land records. No such certificates were produced at the trial. In 1955, the plaintiffs owned a farm on the Farmington River about 800 feet below the dam. The farm had been flooded in 1949. Following that

incident, the defendant paid the plaintiffs $650 for a general release and also bulldozed earth from the plaintiffs' land to form a dike at the northwest corner of their property to a height in excess of the 1949 flood level.

The northeastern section of the United States was subjected to the ravages of the hurricanes Connie and Diane in August, 1955. Diane occurred on August 18 and 19. Heavy rains on August 12 and 13 had already saturated the watershed of the Farmington River. Five days later, the deluge of water accompanying Diane cascaded into the river in unprecedented volume. It caused the flashboards surmounting the Rainbow dam to give way, gradually, between midnight, August 18, and 6 a.m., August 19. At 6 a.m., there was as yet no damage to the plaintiffs' property. When the plaintiffs abandoned their property at 7:30 a.m., only a portion of it was submerged, and this to a depth of but six inches. From 6 a.m., August 19, until 3 a.m., August 20, the amount of water flowing into the reservoir behind the dam increased greatly in volume and turbulence, and the discharge rate at the end of the period was more than ten times what it was at midnight on August 18. The water was almost twelve feet higher than the crest of the dam. The damage to the plaintiffs' property was not caused by the breaching of the flashboards. It occurred between 8 a.m., August 19, and the afternoon of August 20 in the catastrophic flooding of the area. The court concluded that the damage was not caused by any negligence of the defendant but by an act of God.

One of the affirmative allegations of the complaint which the plaintiffs were required to prove was that the dam had been illegally constructed. In attempting to prove this, they produced evidence to show

that neither the files of the board of civil engineers nor the land records contained any record that the necessary certificates had been issued. The court has found that plans and specifications for the dam were submitted to the board prior to construction and that the engineer in charge of the district failed to keep proper records. These findings are not attacked. While the court did not find that a certificate was issued, neither did it find that one had not been issued or that the dam had been constructed in violation of law. Its conclusion that the failure to produce a permit for the construction of the dam was not the proximate cause of the damage to the plaintiffs' property disposes of this issue. To be actionable, the violation of the statute must be shown to have been the proximate cause of the injury. *Longstean* v. *Owen McCaffrey's Sons,* 95 Conn. 486, 494, 111 A. 788. Similarly, the claim of the plaintiffs that the dam was a common nuisance under what is now General Statutes § 19-311 cannot aid them.

In 1950, the state board for the supervision of dams and dikes issued a permit for, and approved the completion of, alterations to the headworks and the dikes. Rev. 1949, § 4731 (as amended, General Statutes § 25-112). The court found that these alterations were properly made, and that the dam itself was properly constructed and installed. The 1949 dealings of the parties did not include any agreement by the defendant to protect the plaintiffs' property from future floodings.

The plaintiffs are not entitled to any material changes in the finding. The rulings on evidence to which exception has been taken were correct.

There is no error.

In this opinion the other judges concurred.