## L and R REALTY ET AL. *v.* CONNECTICUT NATIONAL BANK

## CONNECTICUT NATIONAL BANK *v.* L and R REALTY ET AL.
### (SC 15796)

Callahan, C. J., and Borden, Berdon, Norcott and Katz, Js.

2

Argued April 29—officially released August 4, 1998

*Robert M. Dombroff,* with whom was *Ann M. Sicze-wicz,* for the appellant (Fleet National Bank).

*Robert G. Skelton*, with whom was *Adam M. Brouillard*, for the appellees (L and R Realty et al.).

*Opinion*

KATZ, J. This certified joint appeal concerns the enforceability of a written waiver of the right to a jury trial contained in commercial loan documents. The trial court had struck the cases from the jury docket. The Appellate Court, in a divided opinion, reversed the ensuing judgment of the trial court, holding that an evidentiary hearing on the enforceability of the written waiver was required. We granted certification to appeal,[1] and now reverse the judgment of the Appellate Court.

The facts, as set out by the Appellate Court, are as follows. "On or about June 30, 1989, the Connecticut National Bank (CNB) loaned L and R Realty (L & R) $500,000 in connection with the purchase by L & R of approximately three acres of land in Colchester. At the June 30, 1989 closing, L & R delivered to CNB (1) a commercial promissory note in the principal amount of $500,000 (note), (2) a guarantee agreement (guarantee) by which the general partners of L & R personally guaranteed payment of the note, (3) a mortgage by which L & R created a first mortgage lien on the Colchester property in favor of CNB to secure due performance of L & R's obligations under the note, and (4) a collateral assignment of rents and security agreement by which L & R provided CNB with further security for the performance of L & R's obligations due under the note.

"The general partners of L & R claimed that prior to the closing, a senior vice president of CNB orally agreed to subordinate its mortgage to any future construction

---

[1] We granted certification as to the following question: "Did the Appellate Court properly conclude that a party seeking to enforce a jury trial waiver clause in a commercial contract must establish, by an evidentiary hearing, that the waiver was made knowingly, voluntarily and intelligently?" *L & R Realty* v. *Connecticut National Bank*, 243 Conn. 933, 702 A.2d 641 (1997).

mortgage placed on the Colchester property. In reliance on this oral subordination agreement, L & R began construction on the Colchester property. In a letter dated October 26, 1990, another CNB vice president wrote to L & R that CNB intended 'to stand behind the verbal representation made by [L & R's] prior account officer concerning the subordination of [CNB's] mortgage on the Colchester parcel.'

"On March 25, 1991, L & R received a commitment from Mechanics Savings Bank that it would loan L & R funds for construction on the Colchester property. L & R notified CNB of the construction loan and requested that CNB subordinate its mortgage to this new construction mortgage. On April 15, 1991, CNB refused to subordinate their mortgage to this new construction mortgage without additional collateral. This refusal prevented the construction loan from closing. In April, 1991, L & R stopped paying the CNB note. On February 24, 1992, CNB commenced an action to foreclose its mortgage. L & R responded by bringing a lender liability action against CNB, claiming compensatory and punitive damages on a number of theories: (1) breach of the subordination agreement, (2) promissory estoppel, (3) breach of good faith and fair dealing, (4) fraud, (5) wrongful interference with prospective business relations, (6) economic duress, and (7) engagement in unfair and deceptive practices in violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. L & R also asserted those claims as counterclaims in the foreclosure action." *L & R Realty* v. *Connecticut National Bank*, 46 Conn. App. 432, 433–34, 699 A.2d 291 (1997).

Prior to trial, L & R filed claims for a jury trial in both the foreclosure and lender liability actions. CNB subsequently filed motions to strike the cases from the jury docket based on contractual waivers of the right

to a jury trial contained in the loan documents.[2] At oral argument on these motions, L & R requested a hearing to determine whether the contractual jury trial waivers constituted a knowing, voluntary and intelligent waiver of the right to a jury trial. CNB argued that the general partners of L & R, Raymond G. LeFoll and Curtis H. Roggi, both of whom were attorneys, and Gail LeFoll, the wife of Raymond LeFoll,[3] had signed the loan agreement and a guarantee that contained an express waiver of the right to a jury trial, and that the execution of those documents was sufficient to waive the parties' right to a jury trial. L & R argued that CNB had the burden of proving that the waivers were enforceable. L & R did not, however, allege that the general partners of L & R and Gail LeFoll had not intended to be bound by the waivers. Without conducting a hearing or taking additional evidence, the trial court, *Hurley, J.*, granted CNB's motions to strike the cases from the jury docket, specifically finding "that by signing the note [L & R] waived all claims to a trial by jury."

The cases subsequently were consolidated for trial before *Austin, J.* "After a nine day trial, the trial court

[2] The loan agreement signed by Raymond G. LeFoll and Curtis H. Roggi, the general partners of L & R, contained a jury waiver clause printed in boldface on the signature page, which provided as follows. "Waiver of trial by jury: Borrowers and Other Obligors irrevocably waive all right to a trial by jury in any proceeding hereafter instituted by or against the Borrower or other Obligors in respect of this note or collateral which may secure this note."

In addition, the loan guarantee signed by Gail LeFoll, Raymond LeFoll's wife, contained a jury waiver provision that was printed in boldface on the signature page providing as follows: "The undersigned irrevocably waives all right to a trial by jury in any proceeding hereafter instituted by or against the undersigned in respect of this guaranty or any collateral securing this guaranty." The loan guarantee signed by Raymond LeFoll did not contain a jury waiver clause.

[3] Gail LeFoll susbsequently became a general partner of L & R upon termination of her husband's law partnership with Roggi, the other general partner of L & R. See footnote 2 of this opinion. Roggi was released from his guarantee.

found that the note, the mortgage, and the other security documents delivered by L & R at the closing constituted a complete, final and integrated agreement, and, thus, the trial court found that there was no valid subordination agreement. Accordingly, on June 20, 1995, the trial court rendered judgment in favor of CNB in both the foreclosure and the lender liability actions." *L & R Realty* v. *Connecticut National Bank*, supra, 46 Conn. App. 434–35.

L & R appealed from both judgments, claiming, inter alia, that the trial court improperly had stricken the cases from the jury docket without holding an evidentiary hearing to determine whether the contractual jury trial waivers had been voluntary and knowing.[4] In separate opinions, the Appellate Court reversed the judgments in both the foreclosure and lender liability actions and remanded the cases to the trial court. Id., 443; *Connecticut National Bank* v. *L & R Realty*, 46 Conn. App. 443, 445, 699 A.2d 297 (1997). The Appellate Court concluded that "the trial court improperly granted [CNB's] motion to strike [L & R's claims] from the jury docket. The only evidence before the trial court was the loan documents. Execution of a document that contains a jury trial waiver provision does not automatically constitute a valid waiver of the right to a jury

---

[4] On appeal in the foreclosure action, L & R claimed "that the trial court improperly (1) found that there was sufficient evidence to support a judgment in favor of [CNB], (2) lacked jurisdiction to set law days after dismissal of the first appeal, (3) granted [CNB's] motion to strike the counterclaims from the jury list, (4) awarded attorney's fees, (5) held [that CNB] could enforce the note, and (6) held the subordination agreement was unenforceable." *Connecticut National Bank* v. *L & R Realty*, 46 Conn. App. 443, 444, 699 A.2d 297. In the lender liability action, L & R claimed on appeal that "the trial court improperly (1) granted [CNB's] motion to strike the lender liability claims from the jury docket, (2) found the subordination agreement unenforceable, (3) held that [CNB] was excused from subordinating because [L & R] could not satisfy the Mechanics Savings Bank commitment, (4) held that [L & R] had failed to mitigate [its] damages, and (5) failed to recuse itself." *L & R Realty* v. *Connecticut National Bank*, supra, 46 Conn. App.

trial. . . . Thus, the trial court should have held an evidentiary hearing where [CNB] bore the burden of proving that the contractual jury trial waivers were knowing, voluntary and intelligent." *L & R Realty* v. *Connecticut National Bank*, supra, 46 Conn. App. 442. This appeal followed.[5]

On appeal, CNB argues that: (1) the written waiver was prima facie evidence that L & R knowingly and voluntarily had waived its right to a jury trial; (2) because L & R had not alleged that its waiver had been involuntary, no evidentiary hearing to determine its enforceability was required; and (3) the evidence before the trial court was sufficient to permit the court to evaluate the voluntariness of the waiver provisions under the criteria outlined by the Appellate Court, and was sufficient to support the trial court's conclusions that the waivers were, in fact, voluntary.[6] L & R argues

433. In view of the Appellate Court's conclusions regarding the jury waiver issue, it did not address the other claims.

[5] Since the initiation of the proceedings in these cases, first, Shawmut Bank Connecticut, N.A., as successor in interest to CNB, then Fleet National Bank, as successor in interest to Shawmut Bank Connecticut, N.A., became the party in interest. While Fleet National Bank is currently the party in interest, for purposes of consistency and clarity, we refer herein to CNB as the party in interest.

[6] The Appellate Court concluded that the party seeking to enforce a contractual jury trial waiver has the burden of proving that the agreement to waive was knowing and voluntary and that the trial court must hold an evidentiary hearing to determine whether this standard has been met. The court stated that, on remand, the trial court should consider the following factors: "(1) the conspicuousness of the waiver provisions, (2) whether the parties were represented by counsel, (3) whether there was a gross disparity in bargaining power between the parties, (4) the business or professional experience of the party opposing the waivers, and (5) whether the party opposing the waivers had an opportunity to negotiate contract terms." *L & R Realty* v. *Connecticut National Bank*, supra, 46 Conn. App. 442–43. Although we agree that these factors are relevant to such a determination and that they should be considered when a hearing is required, we disagree that an evidentiary hearing was required under the circumstances of this case. Therefore, we do not address L & R's third claim on appeal, namely, that the trial court correctly applied the criteria outlined by the Appellate Court.

in response that the Appellate Court properly concluded that, in order to determine whether the waiver was knowing and voluntary, an evidentiary hearing was necessary. We conclude that a commercial contractual jury trial waiver provision such as the one at issue in this case is prima facie evidence that the party bound thereby intentionally has waived its constitutional right to a trial by jury. When the party seeking to avoid the waiver fails to allege and to come forward with evidence of a lack of intent to be bound by the waiver provision, the trial court need not conduct an evidentiary hearing to determine its validity.[7]

The standard by which the trial court determines the validity of a jury trial waiver is a question of law that is subject to de novo review. See *Potter* v. *Chicago Pneumatic Tool Co.*, 241 Conn. 199, 694 A.2d 1319 (1997) (de novo review of standard set forth by trial court in jury instruction regarding whether product defectively designed). Once that standard has been established, "[w]hether a party has waived his right to a jury trial presents a question of fact for the trial court. *Stevens* v. *Mutual Protection Fire Ins. Co.*, 84 N.H. 275, 283, 149 A. 498 [1930]." *Krupa* v. *Farmington River Power Co.*, 147 Conn. 153, 156, 157 A.2d 914, dismissed and cert. denied, 364 U.S. 506, 81 S. Ct. 281, 5 L. Ed. 2d 258 (1960). "We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported." *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 222, 435 A.2d 24 (1980). "A finding is clearly erroneous when although there is evidence to support it, the

---

[7] Because the present case concerns a commercial loan transaction, we need not decide whether a contractual jury trial waiver by an ordinary consumer would be enforceable without a preliminary hearing to determine whether the waiver was entered into knowingly and voluntarily.

reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Normand Josef Enterprises, Inc.* v. *Connecticut National Bank*, 230 Conn. 486, 504, 646 A.2d 1289 (1994).

The constitution of Connecticut, article first, § 19, provides that "[t]he right of trial by jury shall remain inviolate." That provision "guarantees the right to a jury trial in all cases for which such a right existed at the time of the adoption of that constitutional provision in 1818. *Commissioner of Environmental Protection* v. *Connecticut Building Wrecking Co.*, 227 Conn. 175, 182, 629 A.2d 1116 (1993); *Skinner* v. *Angliker*, 211 Conn. 370, 373–74, 559 A.2d 701 (1989)." *Associated Investment Co. Ltd. Partnership* v. *Williams Associates IV*, 230 Conn. 148, 153, 645 A.2d 505 (1994); see also *State* v. *Gannon*, 75 Conn. 206, 234, 52 A. 727 (1902) (historical overview of right to trial by jury). The seventh amendment to the United States constitution, which is binding upon only the federal courts; *Colt* v. *Eves*, 12 Conn. 242, 251 (1837); also provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ." We consider federal precedent regarding this language because, like the parallel provision in our state constitution, it has been interpreted to permit waiver of the fundamental right to a jury trial, in advance of litigation, by agreement among the parties. See, e.g., *K.M.C. Co.* v. *Irving Trust Co.*, 757 F.2d 752, 756 (6th Cir. 1985); *Smith-Johnson Motor Corp.* v. *Hoffman Motors Corp.*, 411 F. Sup. 670, 675–77 (E.D. Va. 1975).

Although fundamental, the right to a trial by jury is subject to certain limitations. See, e.g., *Bishop* v. *Kelly*, 206 Conn. 608, 618, 539 A.2d 108 (1988) (generally no right to jury trial for statutory actions established prior to 1818); *Franchi* v. *Farmholme, Inc.*, 191 Conn. 201,

210, 464 A.2d 35 (1983) (constitutional right to jury trial does not extend to equitable claims). Additionally, the right to a jury trial may be forfeited if not asserted in a timely manner; see, e.g., *Mastro* v. *Board of Education*, 200 Conn. 482, 488, 511 A.2d 344 (1986); and may be abandoned when the claimant chooses a forum that does not afford the right to a jury trial. See *Germain* v. *Connecticut National Bank*, 988 F.2d 1323, 1325 (2d Cir. 1993) (filing bankruptcy constitutes waiver of right to jury trial for claims not incidental to bankruptcy claim); *Two Sisters, Inc.* v. *Gosch & Co.*, 171 Conn. 493, 496–97, 370 A.2d 1020 (1976) (agreement to submit disputes to arbitration is binding absent allegation that party seeking to avoid arbitration fraudulently induced to agree to arbitration clause).

Moreover, the right to a jury trial may be waived. "[T]he right to a jury trial is a right which, like other rights, may be waived but . . . it is a right the waiver of which is not to be inferred without reasonably clear evidence of the intent to waive. See *Leahey* v. *Heasley*, 127 Conn. 332, 336, 16 A.2d 609 [1940]." *Krupa* v. *Farmington River Power Co.*, supra, 147 Conn. 156; see also *Gargiulo* v. *Delsole*, 769 F.2d 77 (2d Cir. 1985) (right to jury trial is fundamental and waiver not lightly to be inferred); *Leasing Service Corp.* v. *Crane*, 804 F.2d 828, 833 (4th Cir. 1986) (right to jury trial may be waived by "contract executed before litigation is contemplated"); *K.M.C. Co.* v. *Irving Trust Co.*, supra, 757 F.2d 755–56 (same); *Phoenix Leasing, Inc.* v. *Sure Broadcasting, Inc.*, 843 F. Sup. 1379, 1384 (D. Nev. 1994), aff'd, 89 F.3d 846 (9th Cir. 1996) (same).

We do not write on a clean slate with respect to the enforceability of prelitigation contractual jury trial waivers. In *Nowey* v. *Kravitz*, 133 Conn. 394, 396, 51 A.2d 495 (1947) (per curiam), this court stated that "a binding agreement for such a waiver made in advance of the institution of such action does not violate public

policy; and there is no reason why such an agreement should not be given effect." In *Leary* v. *Stylarama of New Haven, Inc.*, 174 Conn. 217, 218, 384 A.2d 377 (1978), this court implicitly held that prelitigation contractual jury trial waivers are not unenforceable per se, although the court did not address the validity of the particular waiver at issue in that case because it was not reproduced in the record and because there was no evidence in the record of a lack of intent to be bound by the agreement. We adhere to these decisions insofar as they stand for the proposition that prelitigation contractual jury trial waivers are neither against public policy nor are they unenforceable. Because we have not yet had occasion to delineate the burden of proof and the factors to be considered in determining the enforceability of prelitigation contractual jury trial waiver provisions,[8] and because our Superior Courts are divided as to the appropriate standard to apply, however, we take this opportunity to expand on our decisions in *Nowey* and *Leary*.

We begin by noting that jury trial waivers entered into in advance of litigation are similar to arbitration agreements in that both involve the relinquishment of the right to have a jury decide the facts of the case. We have explicitly stated that "[a]rbitration affords a contractual remedy with a view toward expediting disputes. *Naugatuck* v. *AFSCME*, [190 Conn. 323, 326, 460 A.2d 1285 (1983)]. Arbitration is favored because it is intended to avoid the formalities, delay, expense and vexation of ordinary litigation. *Bridgeport* v. *Bridgeport Police Local 1159*, [183 Conn. 102, 107, 438 A.2d 1171 (1981)]." (Internal quotation marks omitted.) *Daginella* v. *Foremost Ins. Co.*, 197 Conn. 26, 33–34, 495 A.2d 709

---

[8] In the context of particular litigation, rather than by prior contractual agreement, this court has stated that waiver of the right to a jury trial requires "reasonably clear evidence of the intent to waive." *Krupa* v. *Farmington River Power Co.*, supra, 147 Conn. 156.

(1985); see also *Administrative & Residual Employees Union* v. *State*, 200 Conn. 345, 349, 510 A.2d 989 (1986) ("[a]rbitration is a favored means of settling differences"); *Malecki* v. *Burnham*, 181 Conn. 211, 212, 435 A.2d 13 (1980) ("[a]rbitration is a creature of contract"). Arbitration agreements illustrate the strong public policy favoring freedom of contract and the efficient resolution of disputes. These policies are also furthered by a jury trial waiver clause.

The majority of other jurisdictions that have addressed prelitigation contractual jury trial waivers has concluded that such waivers generally are enforceable.[9] The majority of federal courts has stated that contractual jury trial waivers are enforceable where they were entered into knowingly and voluntarily.[10] See,

---

[9] Specifically, a number of our sister states have concluded that contractual jury trial waivers are enforceable. See, e.g., *Mall, Inc.* v. *Robbins*, 412 So. 2d 1197 (Ala. 1982) (jury waiver enforceable where both parties experienced businessmen and clause not inconspicuous); *Gelco Corp.* v. *Campanile Motor Service, Inc.*, 677 So. 2d 952 (Fla. App. 1996) (trial court improperly ignored parties' contractual jury trial waiver where no showing why it should not have been enforced); *Pancakes of Hawaii, Inc.* v. *Pomare Properties Corp.*, 85 Haw. 300, 306, 944 P.2d 97 (App. 1997) (right to trial by jury may be waived by "unequivocal acts pointing explicitly to a waiver" but not binding on third parties to agreement); *ST Systems Corp.* v. *Maryland National Bank*, 112 Md. App. 20, 684 A.2d 32 (1996) (parties may contractually waive fundamental right to jury trial although such agreements strictly construed); *Mugnano-Bornstein* v. *Crowell*, 42 Mass. App. 347, 677 N.E.2d 242, cert. denied, 425 Mass. 1102, 680 N.E.2d 101 (1997) (arbitration clause constitutes sufficient evidence of "knowing" waiver of right to trial by jury); *Chase Commercial Corp.* v. *Owen*, 32 Mass. App. 248, 588 N.E.2d 705 (1992) (jury waiver in commercial loan contract enforceable according to its terms despite lack of negotiation of contract terms where parties experienced businessmen rather than ordinary consumers); *Broome* v. *Watts*, 319 S.C. 337, 461 S.E.2d 46 (1995) (prelitigation waiver of trial by jury generally approved, but binds only parties to agreement); *TS 1 Partnership* v. *Allred*, 877 P.2d 156 (Utah App. 1994) (lease provisions waiving jury trial enforceable); but see *Bank South, N.A.* v. *Howard*, 264 Ga. 339, 444 S.E.2d 799 (1994) (prelitigation jury trial waivers not enforceable); see generally annot., 42 A.L.R.5th 53 (1996).

[10] We note that those courts that have stated that they were applying the knowing and voluntary standard to commercial transactions generally have

e.g., *Leasing Service Corp.* v. *Crane,* supra, 804 F.2d 833; *K.M.C. Co.* v. *Irving Trust,* supra, 757 F.2d 758; *National Equipment Rental, Ltd.* v. *Hendrix,* 565 F.2d 255, 258 (2d Cir. 1977); *Phoenix Leasing, Inc.* v. *Sure Broadcasting, Inc.,* supra, 843 F. Sup. 1385; see generally annot., 92 A.L.R. Fed. 688 (1989). These courts are divided as to who bears the burden of proof regarding consent to the waiver. Compare *Leasing Service Corp.* v. *Crane,* supra, 833 (party seeking to enforce waiver bears burden of proving agreement was knowing and voluntary) and *National Equipment Rental, Ltd.* v. *Hendrix,* supra, 258 (same), with *K.M.C. Co.* v. *Irving Trust,* supra, 758 (party seeking to avoid enforcement bears burden of proving that waiver was not knowing and voluntary). State courts, however, generally treat contractual jury trial waivers as presumptively enforceable. See, e.g., *Gelco Corp.* v. *Campanile Motor Service, Inc.,* 677 So. 2d 952, 953 (Fla. App. 1996) (waiver valid absent showing why it should not have been enforced); *Barclays Bank* v. *Heady Electric Co.,* 174 App. Div. 2d 963, 964–65, 571 N.Y.S.2d 650 (1991) (noting defendant's failure to "set forth . . . adequate basis to set aside the waivers"); *TS 1 Partnership* v. *Allred,* 877 P.2d 156 (Utah App. 1994) (jury trial waivers declared enforceable; no discussion of requirement that they be knowing and voluntary); see also *Chase Commercial Corp.* v.

---

not been quick to find evidence of lack of intent. See, e.g., *In re Reggie Packing Co, Inc.,* 671 F. Sup. 571, 574 (N.D. Ill. 1987) (requiring extreme bargaining disadvantage to invalidate waiver and noting that "[o]nly in extreme cases will courts invalidate a waiver clause due to its inconspicuous location in a contract"); *Leasing Service Corp.* v. *Crane,* supra, 804 F.2d 833 (approving enforcement of waiver clause in fine print on reverse side of standard form contract that was located in the middle of thirty-eight line paragraph and noting that parties "were not manifestly unequal in bargaining positions"); *Malan Realty Investors, Inc.* v. *Harris,* 953 S.W.2d 624, 626–28 (Mo. 1997) (waiver clause enforceable where not inconspicuous and no evidence of unequal bargaining power); see also *Chase Commercial Corp.* v. *Owen,* 32 Mass. App. 248, 255, 588 N.E.2d 705 (1992) (noting that majority of federal court cases invalidating contractual jury trial waivers have found "gross inequality in the bargaining positions of the parties").

*Owen*, 32 Mass. App. 248, 254–55, 588 N.E.2d 705 (1992) (noting higher federal standard for enforcement of contractual jury trial waivers); but see *Malan Realty Investors, Inc.* v. *Harris*, 953 S.W.2d 624, 627 (Mo. 1997) (applying knowing and voluntary standard).

The United States Supreme Court, in considering the contractual waiver of due process rights in a sales agreement, has stated that the standards appropriate to determining the validity of waivers of such rights in criminal cases would not *necessarily* apply to a contractual waiver in the context of civil litigation, although the court stated that "a waiver of constitutional rights in any context must, at the very *least*, be clear." (Emphasis in original.) *Fuentes* v. *Shevin*, 407 U.S. 67, 95, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972). When jury trial waiver agreements are entered into in the context of contract negotiations, there is a far greater likelihood that the waiver was agreed to as part of a mutually beneficial contractual arrangement and far less danger of overreaching and duress by the party seeking to enforce the waiver. In accordance with this reasoning, we conclude that it is appropriate to apply a lower standard in determining the enforceability of prelitigation contractual jury trial waivers than for waivers in criminal cases. See *Krupa* v. *Farmington River Power Co.*, supra, 147 Conn. 156 (waiver of right to jury trial, occurring during rather than in advance of litigation, enforceable where there is "reasonably clear evidence of the intent to waive"). We therefore conclude that jury trial waivers entered into in advance of litigation are enforceable where there is clear evidence of an intent to waive.

We next address the question of what may constitute evidence of the intent to waive the right to a jury trial. Although they may differ as to the standard by which the enforceability of prelitigation contractual jury trial waivers must be judged and as to the allocation of the

burdens of proof and production on the issue of consent, federal courts and the courts of our sister states generally have looked to the following factors in determining the validity of such waivers: (1) the conspicuousness of the waiver clause, including (a) its location relative to the signatures of the parties, (b) whether it was buried in the middle of a lengthy agreement, and (c) whether it was printed in a different typeface or font size than the remainder of the contract; (2) whether there was a substantial disparity in bargaining power between the parties to the agreement; (3) whether the party seeking to avoid enforcement was represented by counsel; (4) whether the opposing party had an opportunity to negotiate the terms of the agreement; and (5) whether the opposing party had been fraudulently induced into agreeing specifically to the jury trial waiver. See, e.g., *K.M.C. Co.* v. *Irving Trust Co.*, supra, 757 F.2d 757 (parol evidence rule will not bar proof that party seeking to enforce waiver promised opposing party that waiver would not be enforced under certain circumstances); *Phoenix Leasing, Inc.* v. *Sure Broadcasting, Inc.*, supra, 843 F. Sup. 1384 (enumerating factors); *Gurfein* v. *Sovereign Group*, 826 F. Sup. 890, 921 (E.D. Pa. 1993) (noting that, although general allegation of fraud in inducement relating to contract will not invalidate jury trial waivers, fraudulent inducement directed specifically at waiver clause may prevent enforcement of waiver); *Barclays Bank* v. *Heady Electric Co.*, supra, 174 App. Div. 2d 963 (noting conspicuousness of waiver clause).

We note that evidence regarding the conspicuousness of the waiver clause would likely be apparent on the face of the agreement. Information regarding the remaining factors, however, is more likely to be in the hands of the party seeking to avoid enforcement of the jury trial waiver. It is, therefore, appropriate to place the burden of production as to these factors on the party seeking to avoid enforcement of the waiver.

We conclude that, in accordance with our public policy favoring freedom of contract and the efficient resolution of disputes; *Administrative & Residual Employees Union* v. *State,* supra, 200 Conn. 349; *Malecki* v. *Burnham,* supra, 181 Conn. 212; express commercial contractual jury trial waivers entered into prior to litigation are presumptively enforceable. In order to rebut this presumption, the party seeking to avoid the waiver must come forward with evidence that it clearly did not intend to waive the right to a jury trial. Such evidence may be apparent on the face of the agreement, such as where the waiver is in particularly fine print or is buried in the middle of a voluminous document. In addition, the party seeking to avoid enforcement may come forward with evidence that there was an inequality of bargaining power, that he or she was not represented by counsel, or other evidence indicating a lack of intent to be bound by the waiver provision. Once the party seeking to invalidate the waiver has come forward with such evidence, the trial court must hold a hearing at which additional evidence may be received. At this hearing, the party seeking to avoid the waiver carries the burden of proving, by a preponderance of the evidence, the lack of a clear intent to be bound by the waiver provision. Where, as in the present case, the party seeking to avoid enforcement of the waiver has not claimed that there was no consent to the waiver, no such hearing is required.

Significantly, at oral argument on the motion to strike the cases from the jury docket, L & R merely rested on its claim that an evidentiary hearing was required because the CNB bore the burden of proving that the waiver was knowing and voluntary. L & R did not allege that the waivers had been entered into involuntarily, nor did it come forward with evidence of lack of intent to be bound. Although L & R pointed out that Gail LeFoll, who had signed a guarantee containing a waiver,

was not an attorney, that fact alone was insufficient to raise a question as to whether she lacked the intent to be bound by the terms of the waiver agreement. There is no evidence on the face of the documents indicating that the parties did not accede to the jury trial waiver.[11] The clause contained in the loan agreement signed by the general partners of L & R and the clause contained in the guarantee signed by Gail LeFoll were both located in separate paragraphs located near the signatures and were printed in boldface. The waiver clause in the loan agreement was explicitly titled "Waiver of Trial by Jury." Furthermore, there was not even an *allegation* of a lack of intent to be bound. There was, therefore, no basis for the trial court to suspect that the parties clearly had not intended to be bound by the jury trial waiver clause, and there was no reason for the trial court to conduct an evidentiary hearing to determine the validity of the waiver. We conclude that the trial court properly granted CNB's motion to strike the cases from the jury docket and properly denied L & R's request for a hearing to determine the validity of those waivers.

The judgment is reversed and the case is remanded to the Appellate Court to address the issues remaining on appeal.

In this opinion the other justices concurred.

---

[11] L & R notes that Raymond LeFoll, a general partner of L & R, signed the loan agreement and a guarantee but that only the loan agreement contained a jury trial waiver. L & R argues therefore that LeFoll is not bound by the waiver. We disagree. Where a contractual jury trial waiver is contained in the loan agreement but not in the guarantee agreement, the guarantor may nevertheless be bound by the waiver. See *Chase Commercial Corp.* v. *Owen,* supra, 32 Mass. App. 248 (loan agreement and guarantee part of single transaction); *Franklin National Bank* v. *Capobianco,* 25 App. Div. 2d 445, 266 N.Y.S.2d 961 (1966) (jury trial waiver extended to documents executed in connection with loan agreement). In the present case, the guarantee was entered into as part of the same transaction as the loan agreement. LeFoll is, therefore, bound by the jury trial waivers regardless of whether the waiver appeared in each of the guarantee agreements.