[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR ORDER TO STAY ACTION AND COMPEL ARBITRATION
 THIS APPEARS TO BE A CASE OF FIRST IMPRESSION IN CONNECTICUT.
This is an action in which the plaintiff has alleged sexual harassment by the defendant, John Conway, (hereinafter "Conway"), who was a district manager of the plaintiff's former employer, Commercial Credit Corporation (hereinafter "CCC") and who was her supervisor during her employment. Plaintiff has based her claim on violation of CGS § 46a-60, and she has also made claims under various common law causes of action, against Conway and CCC as the principal for whom Conway was acting as its agent.
Defendant CCC has filed the present motion dated August 5, 1998 claiming that the plaintiff had entered into a valid agreement with CCC to submit any disputes arising out of her employment to arbitration. The motion seeks to stay this action and have the court order the plaintiff to submit her claims herein to arbitration. The parties filed briefs prior to oral argument held on September 8, 1998, and CCC filed a supplemental brief on September 16, 1998.
The dispositive issue concerning this motion is whether or not there was a valid and binding agreement between CCC and the plaintiff to submit this dispute to arbitration. The parties (plaintiff and CCC) agree that the court must decide four (4) criteria as set forth in Genesco, Inc. v. T. Kakiuchi Co. Ltd,815 F.2d 840, 844 (2d Cir. 1987).
(1) whether the parties agreed to arbitrate.
(2) the scope of the arbitration agreement.
 (3) if federal statutory claims are asserted, whether those claims are nonarbitrable; and
 (4) in the event some but not all of the claims are arbitrable, whether to stay the balance of the proceeding pending arbitration.
CT Page 11302
The applicability of (2), (3) and (4) is not in dispute. The only criteria in dispute is (1).
Plaintiff claims that the agreement to arbitrate is void due to lack of consideration and further claims the agreement is invalid because there was no waiver therein by the plaintiff of her right to a jury trial.
 A. LACK OF CONSIDERATION
Defendant, CCC, claims that there was the following consideration to the plaintiff:
 (1) Her employment by CCC and/or her continued employment by CCC.
(2) CCC's promise to plaintiff to arbitrate.
Primerica Corporation, the parent company of CCC, offered the plaintiff employment with Primerica/CCC by letter of September 29, 1993, which was accepted in writing by the plaintiff (see Exh. A)* who started her employment on October 1, 1993. Nothing is mentioned in the letter about arbitration, and the letter states: "Any other discussions that you may have had with us are not part of our offer unless they are described in this letter." According to the affidavit of the defendant, John Conway, he told the plaintiff on the day she started work that she "would have to sign certain forms as a condition of her employment with the company." The plaintiff, in her affidavit, disputes this. Nothing is mentioned by Mr. Conway in the affidavit as to describing to the plaintiff what the forms were or of what they consisted.[1]
He stated that he could not give her the forms that day because he had not yet received them from CCC's office in Baltimore, Maryland. In fact, the plaintiff did not sign the Primerica Principles of Employment agreeing to the arbitration procedures until October 15, 1993. See Exhibit B.* Plaintiff, in her affidavit, claims that when Conway gave her forms on October 15, 1993, including the Principles of Employment, she requested an explaination of the documents, to which he replied that she wasn't agreeing to anything but merely acknowledging receipt of the documents. She also states that he said that she would not receive her paycheck due on October 15, 1993 without having first signed the forms. Conway essentially denies all of this in his affidavit. These are issues of fact which the court will not decide on the basis of the affidavits. CT Page 11303
CCC and the plaintiff agree in their respective briefs that the validation of an arbitration agreement is to be decided under state contract law principles, and based upon the case law, the court so finds, and further finds that it is Connecticut contract law that applies.
Therefore, the court finds that agreeing to arbitration was not part of her hiring of October 1, 1993, and certainly not part of the offer and acceptance in September, 1993 as shown in Exhibit A.* If she did agree to sign forms later, she had no knowledge on October 1st of the content of the forms.
The remaining question then is whether she received consideration for her additional promise on October 15, 1993 to arbitrate disputes.[2] "A modification of an agreement must be supported by valid consideration and requires a party to do, or promise to do, something further than, or different from, that which he is already bound to do" Thermoglaze, Inc. v. MorningsideGardens Co., 23 Conn. App. 741, 745 (1991). "Past consideration does not constitute legal consideration in the law of contracts."Sandelli v. Duffy, 131 Conn. 155 (1944). Dick v. Dick,167 Conn. 210, 224 (1974). Past consideration will not support a new promise.
Further, in the leading case of Torosyan v. BoehringerIngelheim Pharmaceuticals, Inc., 234 Conn. 1, 18 (1995) the court said that continued employment is not sufficient consideration to support a modification to a contract.
". . . When an employer issues an employment manual that substantially interferes with an employee's legitimate expectations about the terms of employment, however, the employee's continued work after notice of those terms cannot be taken as conclusive evidence of the employee's consent to those terms." Torosyan supra. 234 Conn. 1.
On October 1, 1993, the plaintiff had a legitimate expectation that her right to take legal/court action would not be restricted, particularly since she was not informed of the content or purpose of the additional forms to be signed later. The Principles of Employment received on October 15, 1993 was her first notice of the arbitration procedure, a procedure which substantially interfered with her legitimate expectations and/or rights. There was no additional consideration for this diminution of her rights.[3]
CT Page 11304
CCC also claims that its promise to arbitrate was sufficient consideration for plaintiff's promise to arbitrate. The Principles of Employment have to be considered with all of the other manuals, rules and regulations provided to employees by CCC to which CCC expected the employees to be bound. The Employee Handbook, Exhibit 3 to CCC's Motion of August 5, 1998, contains the following language on page 1 and on page 20, the latter under title of Principles of Employment.[4]
 Travelers (Travelers Group) retains the right to
decrease an employee's compensation and/or benefits, transfer, terminate or demote an employee, or otherwise change the terms or conditions of any employee's employment with the Company."
Emphasis added.
It also contains the following language on the first page:
 Unless otherwise expressly stated elsewhere in this Handbook, the Company, for any reason, may unilaterally, in its sole discretion, create, amend, supplement, modify or eliminate any benefits, rules or policies without prior notice to employee.
This makes the promise of CCC (Primerica, Travelers) to arbitrate meaningless since the "promise" can be revoked at any time. For example, the promise to arbitrate could be dropped and replaced with a mandate to the employee to submit any disputes to a panel consisting solely of high level company executives, which would certainly be a loss of the plaintiffs' rights. The language quoted in the handbook is so one sided as to be almost unconscionable and against public policy. Accordingly, the court finds the promise by the employer (CCC/Primerica/Travelers) to be no consideration to the plaintiff.
CCC also claims that the plaintiff signed subsequent agreements to arbitrate. However, these were essentially the same as the one dated October 15, 1993 and contained no change as to the right or obligation to arbitrate and were certainly not based upon any additional consideration to the plaintiff.
For all of the foregoing reasons and under all the circumstances and evidence before the court, this court finds any agreement by the plaintiff to arbitrate disputes to be without consideration, invalid and unenforceable. CT Page 11305
 B. RIGHT TO A JURY TRIAL
The plaintiff also claims that the agreement to arbitrate is unenforceable because it precludes a jury trial and that the plaintiff did not knowingly waive this right since the agreement does not mention such a waiver. Defendant argues that an agreement to arbitrate by its very nature constitutes a waiver of the right to a jury trial.
This issue appears to be a case of first impression inConnecticut.
The Constitution of Connecticut, article first, § 19, provides that "[t]he right of trial by jury shall remain inviolate."
However, this provision has been interpreted to permit waiver of this fundamental right, in advance of litigation by agreement among the parties. Further, this right to a jury trial is subject to certain limitations. See Two Sisters Inc. v. Gosch Co.,171 Conn. 493, 496-97 (1976) where it was held that an agreement to submit disputes to arbitration is binding absent an allegation that the party seeking to avoid arbitration was fraudulently induced to agree to the arbitration clause.[5] However, that agreement was between two corporations, which were sophisticated in business and had equal bargaining power. Also, it should be noted in the case at bar, plaintiff has executed an affidavit claiming that her district manager misled her by telling her that she was merely signing an acknowledgment of her receipt of the documents, which can easily be characterized as fraudulent inducement.
The most relevant case on this issue is the very recent case of LR Realty v. Connecticut National Bank, 246 Conn. 1 (August, 1998) hereafter "LR, supra". Although it is not directly on point, it contains very instructive language or dicta.
LR, supra, involved a claim against the defendant for breach of an agreement to subordinate its mortgage on the plaintiff's real property to any future construction mortgage on that property. The trial court struck the plaintiff's claims from the jury docket on the basis of a written waiver of a jury trial contained in the commercial loan agreements. The Appellate Court reversed, holding that the trial court should have held an evidentiary hearing to determine whether the waivers had been voluntary and knowing. The Supreme Court reversed holding that no CT Page 11306 evidentiary hearing was required, that the jury trial waiver contained in a commercial contract is prima facie evidence that the party bound thereby intentionally waived the constitutional right to a jury trial, and that since the plaintiff had not claimed that there was no consent to the waivers, there was no basis to suspect that the parties did not intend to be bound by the waivers, and there was no reason for that court to conduct an evidentiary hearing.
In footnote 7 the court stated:
 Because the present case concerns a commercial loan transaction, we need not decide whether a contractual jury trial by an ordinary consumer would be enforceable without a preliminary hearing to determine whether the waiver was entered into knowingly and voluntarily.
There are several facts in this case that are distinguishable from the facts in LR, supra. In the latter, the loan agreement contained a jury waiver clause printed in bold face on thesignature page which provided as follows:
 Waiver of trial by jury: Borrowers and Other Obligors irrevocably waive all right to a trial by jury in any proceeding hereafter instituted by or against the Borrower or other Obligors in respect of this note or collateral which may secure this note."
In the case at bar the agreement to arbitrate is simply to submit disputes to arbitration. There is no mention of a court or jury much less a waiver of the right to same. Here, the plaintiff has claimed her right to trial by jury, she has claimed fraudulent inducement, and she is hardly a sophisticated business person on an equal bargaining position with defendant, CCC, all of these positions being contrary to the claims or positions of the plaintiff in LR, supra.
The court did state in LR, supra that: "We therefore conclude that jury trial waivers entered into in advance of litigation are enforceable where there is clear evidence of anintent to waive." at page 14 (emphasis added).
The court also stated: "The standard by which the trial court determines the validity of a jury trial waiver is a question of law which is subject to de novo review." at page 8. CT Page 11307
This court, therefore, concludes that the above quotation from the court in LR, supra is the standard by which this court should determine the validity of a jury trial waiver. The court in LR, supra also stated: "Once that standard has been established, `[w]hether a party has waived his right to a jury trial presents a question of fact for the trial court.'"
As further stated in LR, supra at page 15, the court has indicated that the lower court should look to the following factors in determining the validity of such waivers:
(1) the conspicuousness of the waiver clause, including
 (a) its location relative to the signatures of the parties,
 (b) whether it was buried in the middle of a lengthy agreement, and
 (c) whether it was printed in a different typeface or font size than the remainder of the contract;
 (2) whether there was a substantial disparity in bargaining power between the parties to the agreement;
 (3) whether the party seeking to avoid enforcement was represented by counsel;
 (4) whether the opposing party had an opportunity to negotiate the terms of the agreement; and
 (5) whether the opposing party had been fraudulently induced into agreeing specifically to the jury trial waiver.
Using these factors, this court finds from the evidence already before it that the waiver clause is not conspicuous, primarily for the reason that the waiver clause is not set forth at all. The most that can be said is that the plaintiff should have somehow interpreted the agreement to arbitrate disputes as a waiver of the right to a jury trial. However, with there not being a waiver clause as such and there being no mention of a jury trial, a jury or a court, the conspicuousness of the waiver clause is totally lacking. On that basis alone, this court finds that a waiver of the right to a jury trial was not knowingly and CT Page 11308 voluntarily made. From the face of the agreement, it is clear that the plaintiff did not intend to waive the right to a jury trial.
From the identity of the parties to the agreement, this court also finds that there was a substantial disparity in bargaining power between the parties to the agreement, that the plaintiff was not represented by counsel at the time she signed the agreement, and it is clear that the plaintiff did not have an opportunity to negotiate the terms of the agreement. As for the remaining factor, the plaintiff has claimed she was fraudulently induced into signing the agreement. Proof of that, which would be the burden of the plaintiff, would have to be obtained at an evidentiary hearing.
LR, supra also states that ". . . the party seeking to avoid enforcement may come forward with evidence that there was an inequality of bargaining power, that he or she was not represented by counsel, or other evidence indicating a lack of intent to be bound by the waiver provision. Once the party seeking to invalidate the waiver has come forward with such evidence, the trial court must hold a hearing at which additional evidence may be received." at page 16.
As stated above, some of this evidence is apparent from the facts which are not in dispute. This court finds that based upon factor (1) the plaintiff clearly did not intend to waive the right to a jury trial. Factors (2), (3) and (4) appear to be clear based upon the facts before the court and the court's finding hereby of those factors in favor of the plaintiff as indicated above supports the conclusion based upon the factor described in (1).
At the very least, there would have to be an evidentiary hearing as to factor (5) and if needed, additional evidence as to factors (2), and (4). Based upon the courts conclusions above, including its conclusion of lack of consideration, it does not appear that there is a necessity for such a hearing. However, if the defendant requests same, this court is willing to hold such a hearing.
 C. IT IS INEOUITABLE TO COMPEL ARBITRATION
The plaintiff also argues that it is inequitable to compel arbitration under the terms of her employer's arbitration policy and sets forth the reasons therein. However, issue of whether or CT Page 11309 not there should be a stay of action and a compelling of the arbitration is an issue of law and not an issue of equity. Accordingly, the court will not address the plaintiff's claims in this regard.
For all of the foregoing reasons, the defendant's motion for order to stay action and compel arbitration is denied.
Rittenband, J.