[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
These two cases pertain to the same controversy between the two parties, who will be referred to hereafter as Hessler, who is the employee and Smith Barney who is the employer.
On September 12, 1998 Hessler commenced an action against Smith Barney alleging breaches of certain employment agreements. By writ summons and complaint dated February 23, 1999 Smith Barney commenced an action seeking to compel arbitration, pursuant to General Statutes 52-410. Hessler, in this latter action, "denies any implication that an enforceable agreement to arbitrate exists between the parties or that she is under any obligation to arbitrate her claims against the plaintiffs". See paragraph 12 of answer of May 12, 1999.
Smith Barney, in the former action, on February 23, 1999 filed a Motion to Dismiss, and filed a Motion for Stay, the latter pursuant to General Statutes 52-409. The basis for each of these motions is that Smith Barney claims that Hessler "is required to arbitrate her claims in accordance with a written agreement to arbitrated."
The issue of an agreement to arbitrate is common to both cases and hence were heard together at Short Calendar (General Statutes 52-410 (c)).
 I. Facts
Neither party requested that the court hear testimony. The CT Page 11916 court accepts Mrs. Hessler's statement, in the complaint that she was offered and accepted a position of Vice President of the Travelers Insurance Company in the Record Keeping Division.
Smith Barney submitted an affidavit of Barbara Silvan, vice president and Divisional Director of Human Resources for Smith Barney, dated February 22, 1999. The affidavit refers to and attaches thereto a document entitled "The Travelers Insurance Group", captioned "Principles of Employment". The document is dated: "June 19, 1995", contains the signature caption "Accepted and Agreed"; and immediately below contains the signature of "Kimberly Hessler". The "proposed starting date" was filled in as "July 11, 1995".
The Principles of Employment agreement contains the agreement that "you and we agree . . . to submit the dispute . . . to binding arbitration . . . in accordance with . . . the arbitration rules . . . and as supplemented by The Travelers Inc. Employment Arbitration Policy. A detailed description of these procedures is enclosed for your review in the attached Employee Handbook. Again it is your responsibility to read and understand the dispute resolution/arbitration procedures. If you have any questions, now or in the future, please ask."
Attached to the affidavit is the referenced "Travelers Insurance Companies Employee Handbook". The handbook provides, on Policy" the following: "This policy makes arbitration the required, and exclusive, forum for the resolution of all employment dispute that may arise. . . ." A later agreement, date and signed October 19, 1995, reiterates the requirement for "binding arbitration" and further provides "If for any reason there is an actual court case on any matter, Smith Barney and I waive the right to a jury trial."
Ms. Hessler does not claim, in any of the pleadings or the briefs, that she did not receive or did not understand the "Principles of Employment" document dated June 19, 1995, or the referenced Employee Handbook attached thereto. She asserts no defense to the said initial contract of employment on any traditional grounds such as fraud, lack of consideration, incapacity to contract, or the like.
Salomon Smith Barney is a successor to Travelers Insurance Company.
 II.
CT Page 11917 Issues
Ms. Hessler claims that the arbitration provision of the contract is unenforceable because it fails to contain a jury waiver clause. She also claims that this issue is precluded from being raised because the matter was decided adverse to Smith Barney in litigation between another plaintiff and a party related to Smith Barney.
 III.
The question of jury waivers.
Ms. Hessler claims that because juries are not available in arbitration proceedings, there must be a waiver of the right to trial by jury set forth in the written arbitration agreement. She cites Article 1, Section 19 of the Connecticut Constitution, to wit "the right of trial by jury shall remain inviolate".
Ms. Hessler relies primarily upon the recent Superior court case of Norton v. Commercial Credit Corporation, Superior court. Judicial District of Hartford/New Britain at Hartford, Docket Number CV 98-578441S October 6, 1998. A review of that case reveals that the facts of that case differ substantially from that of the instant case.
In Norton the plaintiff entered her employment in response to a letter furnished to her by the employer which, in essence, set forth her job position, her rate of pay, the name of the supervisor. The letter made no reference whatsoever of arbitration nor did it refer to any other document which made any reference to arbitration. By affidavit the defendant stated that they told the plaintiff that she "would have to sign certain forms as a condition of her employment with the company", but even if the court were to accept that proposition the defendant did not tell the plaintiff what would be the content of the forms. Her hiring took place on October 1, 1993. On October 15, 1993, she was furnished the "forms" which included "the Primerica Principles of Employment" form, which she signed, and which included an arbitration provision.
The court found that there was no consideration for the October 15 agreement to arbitrate. "Past consideration does not constitute legal consideration in the law of contracts." Norton,
supra, p. 2. The court further stated, citing Boehringer v.CT Page 11918Ingelheim Pharmaceutical Inc., 234 Conn. 210. 224 (1974), "that continued employment is not sufficient consideration to support a modification to a contract." Norton, supra, p. 2. The court then determined that "this court finds any agreement by the plaintiff to arbitrate disputes to be without consideration, invalid, andunenforceable." Norton, supra, p. 2. emphasis added.
As is readily apparent, the factual scenario in the Norton
case, supra, is the opposite of the facts in the instant case. Here, the agreement to arbitrate is part of the initial hiring, is supported by consideration, and is part of the contract of employment.
Arbitration as a method of alternative dispute resolution is a significant vehicle available to parties, by agreement. Arbitration is sanctioned by statute and is referred to in some of the earliest of the Connecticut Reports. It covers a vast number of contracts pertaining to a multitude of individuals, and of organizations and their members, is common in Labor Union-Management relations, and may form a part of the auto uninsured motorist coverage of each motorist in the state. See General Statutes 36a-336 (e).
Arbitration, as an alternative dispute mechanism, is an alternative to judicial litigation, and therefore excludes trials, both court trials and jury trials.
The Connecticut Supreme Court in the recent case L P Realtyv. Connecticut National Bank, 246 Conn. 1 (1998) dealt with the question of whether a provision in a bank loan contract, which waived jury trial is adequate to constitute a waiver of the constitutional right to jury trial. Ms. Hessler relies upon this case, as did the Superior Court in Norton, supra, to discuss the question of jury waiver which inherently flows from the fact of an arbitration agreement.
Both the facts and the issues in L R Realty, supra are very different than are the facts and issues in arbitration cases. L 
R dealt with an unusual set of circumstances whereby, while preserving the remedy of common law trial one of the commercial loan documents purported to contain a jury waiver.
The Supreme Court, in upholding the waiver under the particular facts of that case, specifically refers to the widespread use of arbitration agreements as a legally permissible alternative to trial by jury. CT Page 11919
 "Two Sisters. Inc. v. Gosch Co., 171 Conn. 493, 496-97, 370 A.2d 1020 (1976) (agreement to submit disputes to arbitration is binding, absent allegation that party seeking to avoid arbitration fraudulently induced to agree to arbitration clause)." L R Realty, supra, p. 10. (Emphasis added)
 "We begin by noting that jury trial waivers entered into an advance of litigation are similar to arbitration agreements in that both involve the relinquishment of the right to have a jury decide the facts of the case. We have explicitly stated that "[a]rbitration affords a contractual remedy with a view toward expediting disputes Naugatuck v. AFSCME, 190 Conn. 323, 326, 460 A.2d 1285 (1983)]. Arbitration is favored because it is intended to avoid the formalities, delay, expense and vexation of ordinary litigation. Bridgeport v. Bridgeport Police Local 1159, [183 Conn. 102, 107, 438 A.2d 1171 (1981]." (Internal quotation marks omitted.) Daginella v. Foremost Ins. Co., 197 Conn. 26, 33-34, 495 A.2d 709 (1985); see also Administrative Residual Employees Union v. State, 200 Conn. 2345, 349, 510 A.2d 989 (1986) ("[a]rbitration is a favored means of settling differences"_; Malecki v. Burnham, 181 Conn. 211, 212, 435 A.2d 13 (1980) {"[a]rbitration is a creature of contract"). Arbitration agreements illustrate the strong public policy favoring freedom of contracts and the efficient resolution of disputes. These policies are also furthered by a jury trial waiver clause. L R Realty, supra, p. 11, 12..
In the present case it is clear that by signing the Principles of Employment agreement of June 19, 1995 the employee Ms. Hessler knew and understood and agreed that disputes such as the disputes/claims herein were to be subject to arbitration. The court will not find ambiguity where none exists. See Sturman v.Locha, 191 Conn. 1, 14 (1983). Ms. Hessler does not claim, or seek the opportunity to testify, that she was fraudulently induced to agree to the arbitration clause. The court does not credit the contention that an arbitration agreement requires a written provision or notice that jury trial is waived.
 IV. Collateral Estoppel
Ms. Hessler claims that Smith-Barney is a successor to Commercial Credit Corporation, the defendant in the Norton case, supra, and therefore the herein defendant is collaterally CT Page 11920 estopped from taking the position that a specific written waiver of jury trial is necessary in order to effectuate the arbitration provisions of the employment contract.
First, even if one were to assume that Smith-Barney is in fact a successor to Commercial Credit Corporation, yet the factual circumstances, and hence the issues in this case are dissimilar to those in the Norton case. See Aetna Casualty Surety v. Jones, 220 Conn. 297. The court in Norton determined that there was no enforceable arbitration agreement, under the law of contract, because of lack of consideration; there was a disparity of bargaining power, that she did not have an opportunity to negotiate terms of the agreement: that she was misled; and that conduct "can easily be characterized as fraudulent inducement."
None of these factors are claimed to be present in the instant case. The doctrine of Collateral Estoppel is not here appropriate.
 V. Order
The court finds that the agreement to arbitrate is "valid, irrevocable and enforceable" General Statutes 52-408. The court determines that the proper remedy is to "stay the action or proceeding until an arbitration has been had in compliance with the agreement". General Statutes 52-409. The court orders that the parties proceed to arbitration. General Statutes 52-410.
L. Paul Sullivan, J.